**Charles J. GIVENS, Plaintiff,**

v.

**Jane Bryant QUINN and Does 1–50, inclusive, Defendants.**

**No. 93–0737–CV–W–1.**

United States District Court, W.D. Missouri, Western Division.

March 24, 1994.

---

Timothy Monsees, Kansas City, MO, for plaintiff.

John Parry, Washington, DC, Gene Voight, Joseph Gall, Shook, Hardy, Kansas City, MO, for defendants.

## ORDER

WHIPPLE, District Judge.

Defendant[1] Jane Bryant Quinn asks this court to dismiss the first amended complaint. The court will deny the motion to dismiss the first amended complaint, but will dismiss the first count in the complaint for the reasons stated below.

---

1. The caption of both the original and the first amended complaint indicates that plaintiff intends to sue more than one person, but the body of the complaint refers only to Jane Bryant Quinn and does not refer to any other person, known or unknown.

## I. Background

Plaintiff Charles J. Givens is a resident of Florida who sells financial advice through books and seminars. Quinn is a resident of New York who gives financial advice in her books, magazine articles and a a nationally syndicated newspaper column. An article attached to the first amended complaint notes Quinn's newspaper column is syndicated through the *Washington Post.*

Givens alleges Quinn defamed him by indicating in her syndicated column and in two *Newsweek* articles that Givens gives "biased dangerous advice" and leads "his students to financial ruin." The first amended complaint suggests Quinn defamed him because his book knocked Quinn's book off the Best Seller List.

In the original complaint, Givens only alleged Quinn defamed him in a syndicated column that first appeared on November 21, 1991 and appeared in the *Kansas City Star* on November 24, 1991. In the first amended complaint, Givens adds several other instances of allegedly libelous statements. The first amended complaint states Quinn next defamed Givens in a syndicated column that appeared in the *Kansas City Star* on April 27, 1993. Quinn allegedly defamed Givens again in a May 17, 1993 and a June 28, 1993 *Newsweek* article. In response to the May 17, 1993 *Newsweek* article, Givens questioned Quinn's honesty in a full-page advertisement in the May 27, 1993 edition of *USA Today.*

Givens filed the original complaint on November 23, 1992, in the Circuit Court of Jackson County, Missouri and on July 2, 1993, Givens served a copy of the summons and the complaint on Quinn. Quinn removed the case to this court. Quinn now asks this court to dismiss the case because the statute of limitations bars Givens' from suing.

## II. Statute of Limitations

Quinn does not dispute the syndicated column that appeared on April 27, 1991, in the *Kansas City Star* and the two articles that appeared in *Newsweek* survive statute of limitations analysis. Quinn does dispute that a claim for libel based on a syndicated column that first appeared on November 21, 1991 and appeared in the *Kansas City Star* on November 24, 1991 can survive statute of limitations analysis.

### A. Single Publication Rule

Quinn argues the applicable statute of limitations is one year. Quinn correctly notes that Missouri courts apply the statute of limitations from the state where the libel was first published. Quinn argues that this court must apply a one-year and not Missouri's two-year statute of limitations because before the syndicated column appeared in Missouri, it appeared in states that apply a one-year statute of limitations.

Quinn's argument assumes Givens is limited to a single cause of action for a syndicated column that appeared in different newspapers throughout the country and not a cause of action for each newspaper edition. In short, Quinn assumes, without any analysis, the single publication rule applies. If the single publication rule applies, then Givens has one cause of action for the syndicated column that first appeared on November 21, 1991 and this court will use Missouri's borrowing statute to apply a non-Missouri statute of limitations. *Finnegan v. Squire Publishers, Inc.,* 765 S.W.2d 703, 704–05 (Mo.Ct. App.1989) (In libel actions, Missouri will borrow the statute of limitations of the state where the allegedly libelous statement is first published.). If the single publication rule does not apply, then Givens has a cause of action for each newspaper edition the syndicated column appeared in. The syndicated column appeared on November 24, 1991, in the *Kansas City Star,* which is published in Missouri. Thus, if the single publication rule does not apply, Givens would have a cause of action that originated in Missouri and the court would apply Missouri's two-year statute of limitations.

English common law, later adopted by American courts, followed the multiple publication rule which provided a cause of action for each copy of a newspaper edition containing a defamatory statement. *See, Rinaldi v. Viking Penguin, Inc.,* 52 N.Y.2d 422, 438 N.Y.S.2d 496, 499–501, 420 N.E.2d 377, 380–81 (1981) (explaining the multiple publication rule and its evolution to the single publication rule in New York, the first state in the country to adopt the single publication rule).

Thus, under the multiple publication rule, if a newspaper prints a hundred thousand copies of an edition containing libelous statements, a plaintiff can bring a hundred thousand causes of action against the newspaper. *Cf. Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 777, 104 S.Ct. 1473, 1479, 79 L.Ed.2d 790 (1984) (The single publication rule protects defendants from "harassment resulting from multiple suits.") (citing the Restatement (Second) of Torts § 577A, Comment f (1977)). Also, under the multiple publication rule, the statute of limitations does not run until the last copy of the edition is removed from sale—providing the plaintiff with almost complete immunity from any statute of limitations. Restatement (Second) of Torts § 577A, Comment c (1977). Two problems thus exist with the multiple publication rule: the rule allows a plaintiff to bring numerous causes of action against a defendant simply to harass the defendant and it renders the statute of limitations in libel actions a nullity.

Missouri, for purposes of venue, judicially adopted the single publication rule presumably, to prevent these two problems. *State ex rel. Drake Publishers v. Baker*, 859 S.W.2d 201, 204 (Mo.Ct.App.1993); *Litzinger v. Pulitzer Publishing Co.*, 356 S.W.2d 81, 84–87 (Mo.1962). "The single publication rule requires a plaintiff to recover all of his or her damages arising from a libel published in any one edition or issue of a magazine in one action. Restatement (Second) of Torts § 577A (1977)." [2] *See also, Patch v. Playboy Enterprises, Inc.*, 652 F.2d 754, 757 (8th Cir. 1981) (applying Missouri law).

■ This court recognizes Missouri courts only reluctantly extend cases interpreting venue to other contexts. *Finnegan*, 765 S.W.2d at 705. In a case interpreting Missouri's borrowing statute, the court explained why it refused to rely on venue cases:

The borrowing statute is primarily designed to prevent a plaintiff from forum shopping to gain more time to initiate a cause of action. A purpose of statutorily specified venue is to protect the defendant against the risk that a plaintiff will select an unfair or inconvenient place of trial. Additionally, Missouri's venue statute prevents a plaintiff seeking damages for libel in a widely distributed publication from gaining privileges of venue not allowed by law to a plaintiff in tort actions other than libel, in which the cause of action could accrue only in one county.

*Id.* The court is mindful of this admonition, but does not believe these words of caution apply to determining whether Missouri would apply the single publication rule to multistate defamation cases. This court is not interpreting either Missouri's venue or borrowing statute at this point. The single publication rule is not a choice-of-law rule. Instead, the single publication rule determines how many causes of action a plaintiff might have and when the statute of limitations begins to run. The court believes that Missouri will follow the majority of the states in applying the single publication rule in multistate defamation actions. *Keeton*, 465 U.S. at 777 n. 8, 104 S.Ct. at 1479 n. 8 ("The great majority of the States now follow the 'single publication rule.' "). *But see, Lewis v. Reader's Digest Ass'n, Inc.*, 162 Mont. 401, 512 P.2d 702, 706 (1973) (refusing to follow the single publication rule for all purposes, including venue). Missouri already recognizes the single publication rule for venue purposes and nothing in the case law, dicta or otherwise, suggests Missouri would not apply the rule in other contexts.

Missouri courts have not decided whether the single publication rule applies to the facts

2. Section 577A of the Second Restatement of Torts states:
  (1) Except as stated in Subsections (2) and (3), each of several communications to a third person by the same defamer is a separate publication.
  (2) A single communication heard at the same time by two or more third persons is a single publication.
  (3) Any one edition of a book or newspaper, or any one radio or television broadcast, exhibition of a motion picture or similar aggregate communication is a single publication.
  (4) As to any single publication,
    (a) only one action for damages can be maintained;
    (b) all damages suffered in all jurisdictions can be recovered in the one action; and
    (c) a judgment for or against the plaintiff upon the merits of any action for damages bars any other action for damages between the same parties in all jurisdictions.

of this case. For example, in *Finnegan*, 765 S.W.2d at 704–05, a Missouri plaintiff sued a newspaper printed in Kansas, but distributed in both Kansas and Missouri for libel. The plaintiff attempted to apply Missouri's two-year statute of limitations, but the court held the Kansas one-year statute of limitations applied instead. *Id.* The court noted that the Missouri borrowing statute required the court to determine where the cause of action originated. *Id.* The court held that in libel cases, the court would "borrow" the statute of limitations from the state where the allegedly libelous statements were first published. *Id.* The defendant printed and originally distributed the newspaper in Kansas, thus the court applied the Kansas statute of limitations. *Id.* In the present case, however, the court cannot determine where the cause of action originated until it determines how many causes of action exist. In *Finnegan*, the plaintiff only had one cause of action because under the single publication rule, a plaintiff does not obtain an additional cause of action simply because a newspaper published in Kansas circulates in Missouri. Restatement (Second) of Torts, § 577A, Comment d (1977). The allegedly libelous statements in the present case were published in not one newspaper, but in many newspapers. *Finnegan* will guide the court in determining where the cause of action originated, but it does not help the court in its efforts to determine if more than one cause of action exists.

The facts of a Pennsylvania Supreme Court case follow those in the present case more closely. *Graham v. Today's Spirit,* 503 Pa. 52, 468 A.2d 454 (1983). Pennsylvania, like Missouri, follows the single publication rule although Pennsylvania adopted the rule legislatively, not judicially. In *Graham,* the plaintiff sued the two newspapers which printed allegedly libelous statements about him and also the reporter who wrote the newspaper articles. *Id.,* 468 A.2d at 456. The article that appeared in the first newspaper was identical to that which appeared in the second newspaper. *Id.* The reporter worked for both newspapers and the same publishing company owned both newspapers. *Id.* The court in *Graham* held the plaintiff had two causes of action: one for when the first newspaper published the article and the other for when the second newspaper published the article. *Id.,* 468 A.2d at 458. The court reasoned that under the Second Restatement, publishing a libelous statement in two separate editions of a newspaper constitutes two causes of action, but a plaintiff does not obtain an additional cause of action simply because one of the editions circulates in another state. *Id.,* 468 A.2d at 457.

The court might follow the reasoning of the court in *Graham* if Givens sued not only Quinn, but also the newspapers such as the *Kansas City Star,* which published the allegedly defamatory statements.[3] This court must distinguish between a republication and a repetition:

> The test of whether the article is a republication or a repetition should not depend on an interval of time, or a separate sale but upon the answer to the question. *Was the act of the defendant a conscious independent one?* The individual who sends the same letter to different persons at the same or another time, consciously and intentionally and independently does so. Each separate mailing is a separate *conscious* act. Each would then be provable as showing conscious intent. Whereas, in the case of a newspaper, as the circulation is considered one of the chief items of damage, and plaintiff recovers for all the distribution, no *conscious* intent arises until the defendant *consciously* as a second edition republishes the article. In each case it is the *conscious* act which determines.

*Wathan v. Equitable Life Assurance Soc'y,* 636 F.Supp. 1530, 1534 (C.D.Ill.1986) (citation omitted).

The syndicated column is more like a repetition than a republication. Unlike *Graham,* Givens does not sue the *Kansas City Star* or any of the other newspapers that printed the column. Givens also chose not to

---

**3.** The court does decide at this time if it would follow *Graham*'s reasoning if Givens also sued the newspapers.

sue Quinn's syndicator. The only defendant in the present case is Quinn. Quinn wrote the column that first appeared on November 21, 1991 and presumably submitted the column to her syndicator. At this point, Quinn's active role is complete and any additional role she may play at best, is passive. The syndicator distributed the column to various newspapers which choose whether to print the column. The conscious and independent decision of a newspaper to publish the column constitutes a separate cause of action, not against Quinn, but against a newspaper that publishes the column.[4] Givens may only bring a single cause of action against Quinn. However, if Givens proves Quinn did libel him, Givens may collect damages for the harm the syndicated column caused to his reputation in each jurisdiction that the column appeared and circulated in. Restatement (Second) of Torts § 577A(4) (1977). In terms of the writer of a syndicated column, the syndicated column functions as a single edition of a nationally circulated magazine where a plaintiff may bring a single cause of action against the writer, but collect damages based on the number of issues of the magazine. Restatement (Second) of Torts § 577A, illustrations 3, 7 & 8 (1977).

More importantly, applying the single publication rule to the writer of a syndicated column also makes sense considering the policies surrounding the single publication rule. Recognizing the multiple publication rule did not make sense given the emergence of the mass media, courts and the legislatures in a majority of states adopted the single publication rule. *E.g., Rinaldi*, 438 N.Y.S.2d at 499–502, 420 N.E.2d at 380–82 (The single publication rule recognizes the "realities of a society in which mass distribution and nationwide communication now are norms."). If the court did not apply the single publication rule, the potential for Givens to bring multiple lawsuits simply to harass Quinn

would exist because Givens could bring a separate cause of action against Quinn in each state where a newspaper published her syndicated column.[5] The failure to apply the single publication rule would also frustrate the purpose of the statute of limitations because each time another newspaper published the syndicated column, Givens would have a new statute of limitations in which to bring a cause of action against Quinn. The whole purpose of the single publication rule is to prevent these problems. Thus, in terms of the writer of a syndicated column, the purposes of the single publication rule also dictate that this court treat a syndicated column as a single integrated publication.

Further, applying the single publication rule in these circumstances benefits a plaintiff who is not forum shopping. If the court did not apply the single publication rule, Givens would have to bring a separate law suit each time and in each state where the syndicated column containing defamatory statements appeared. This requirement would place a heavy burden on a plaintiff trying to recover damages for the harm to his or her reputation a syndicated column caused. The court refuses to place such a burden on a plaintiff who claims injury to his or her reputation for "the individual's right to the protection of his own good name reflects no more than our basic concept of the essential dignity and worth of every human being—a concept at the root of any decent system of ordered liberty." *Dun & Bradstreet, Inc. v. Greenmoss Builders, Inc.*, 472 U.S. 749, 757–58, 105 S.Ct. 2939, 2944–45, 86 L.Ed.2d 593 (1985) (citation omitted). Thus, applying the single publication rule benefits a plaintiff who is not forum shopping.

## B. Borrowing Statute

■ As explained earlier, because the single publication rule applies, Givens has one cause of action for the syndicated column that first appeared on November 21, 1991

---

4. The court does not express an opinion whether Givens could win on the merits if he did sue the newspapers. Further, the court does not express an opinion whether the newspapers could raise viable defenses.

5. One example of the potential for ruinous litigation in this situation occurred before the majority of states adopted the single publication rule.

There, Congressman Martin Sweeney of Ohio brought 68 suits alleging libel against the *Washington Merry–Go–Round* which was distributed by the United Feature Syndicate to 300 newspapers nationwide. *See*, Robert A. Leflar, *The Single Publication Rule*, 25 Rocky Mountain L.Rev. 263, 268 n. 27 (1952).

and this court will use Missouri's borrowing statute [6] to apply a non-Missouri statute of limitations. *Finnegan,* 765 S.W.2d at 704–05 (In libel actions, Missouri will borrow the statute of limitations of the state where the allegedly libelous statement is first published.). The court must first determine where the allegedly libelous statements were first published.

Publication is a term of art in libel law. In the legal sense, publication is the intentional or negligent communication of defamatory statements to a person other than the one defamed. Restatement (Second) of Torts § 577 (1977). *See also, Herberholt v. dePaul Community Health Ctr.,* 625 S.W.2d 617, 624–25 (Mo.1981) (discussing the general definition of publication in dicta). Thus, publication can occur before the printing of the newspapers. Given the realities of the mass media, however, the court believes *Summers v. The Washington Times,* 21 Med.L.Rptr. 2127, 1993 WL 391047 (D.D.C.1993), articulates a better approach. In *Summers,* a media advocacy group mailed a column to various newspapers that allegedly contained libelous statements. *Id.* at 2127. The media advocacy group and the other defendants argued that the one-year statute of limitations began to run at the time the media advocacy group mailed the column to the various newspapers. *Id.* The court held instead that publication occurs on the date when the column becomes "available to the general public." *Id.* at 2128. *See also, Fleury v. Harper & Row, Publishers, Inc.,* 698 F.2d 1022 (9th Cir.1983) (applying the "available to the general public" approach to determining when a libel is published), *overruled on other grounds, In re Complaint of McLinn,* 739 F.2d 1395, 1397 (9th Cir.1984).

The syndicated column appeared in six states before it appeared in Missouri on November 24, 1991. The syndicated column first appeared on November 21, 1991, in Arizona, Illinois, Kentucky, Louisiana and Michigan. Following the holding in *Summers,* the syndicated column was "available to the general public" on November 21, 1991. The court does not need to determine which state's statute of limitations applies because each of the five states in which the column appeared on November 21, 1991, applies a one-year statute of limitations to libel cases.[7] Thus, the court will apply a one-year statute of limitations to the syndicated column that first appeared on November 21, 1991.

### C. Undue Delay

■ The one-year statute of limitations for the November 21, 1991 syndicated column expired on Saturday, November 21, 1992. Givens filed the original complaint on November 23, 1992. Missouri Supreme Court Rule 44.01(a) states, in part, that if the last day of a period of time is a Saturday, Sunday or a legal holiday, the period of time "runs until the end of the next day which is neither a Saturday, Sunday nor a legal holiday." Monday, November 23, 1992, the day Givens filed the complaint, was the first day following November 21, 1991, that Givens could file the complaint. Thus, Givens filed the complaint within the one-year statute of limitations.

Quinn argues, however, that the filing of the complaint did not stop the running of the statute of limitations in the present case. Over seven months after filing the complaint, Givens served a copy of the complaint and the summons on Quinn. Quinn argues the filing of the complaint did not stop the running of the statute of limitations because of

---

**6.** Missouri's borrowing statute, § 516.190 of the Missouri Revised Code states: "[w]henever a cause of action has been fully barred by the laws of the state, territory or country in which it originated, said bar shall be a complete defense to any action thereon, brought in any of the courts of this state."

**7.** *See,* Ariz.Rev.Stat. § 12–541(1); Ill.Comp.Stat. ch 735 § 5/13–201; Ky.Rev.Stat. § 413.140(1)(d); La.Civ.Code art. 3492; Mich. Comp.Laws § 600.5805. Even if Missouri would look to the state where, academically, the state-

ments were first published, the court would still apply a one-year statute of limitations. New York, Quinn's residence, and the District of Columbia, where Quinn's syndicator is located, both apply a one-year statute of limitations in libel cases. *See,* NY Civ.Prac. L & R. 215; DC Code Ann. § 12–301.

The parties shall brief the court on which state's substantive law applies to each count in any future motions that require this court to rule on substantive issues.

this failure to exercise "due diligence" in serving process.

The court will look to Missouri law to determine if Givens exercised due diligence in serving process because "[i]n determining the validity of service prior to removal, a federal court must apply the law of the state under which the service was made." *Allen v. Ferguson,* 791 F.2d 611, 616 n. 8 (7th Cir.1986) (citing 4 C. Wright & A. Miller, *Federal Practice and Procedure* § 1082 (1969)). In Missouri, the filing of a complaint stops the running of the statute of limitations on the condition that plaintiff diligently serve a defendant with process. *Miller v. Agathen,* 804 S.W.2d 849, 850 (Mo.Ct. App.1991). The factors this court must examine to determine if Givens diligently served process include: (1) the length of the delay; (2) the parties' participation in the case; (3) the length of the statute of limitations; (4) the available means of obtaining service; (5) any prejudice from the delay and (6) any other relevant factors. *Id.* at 850-51. *U.S. Laminating Corp. v. Consolidated Freightways Corp.,* 716 S.W.2d 847, 849 (Mo. Ct.App.1986).

In *Daniels v. Schierding,* 650 S.W.2d 337 (Mo.Ct.App.1983), the plaintiff filed within the statute of limitations, but took five months to serve process. *Id.* at 338-39. The plaintiff did not attempt to serve the defendant for three months. After the plaintiff attempted, unsuccessfully to serve process, plaintiff waited another two months before requesting an alias summons. *Id.* at 339. The *Daniels* court also noted that the plaintiff should not have had any difficulty in serving process. *Id.* Given these factors, the *Daniels* court held that the plaintiff did not exercise due diligence in serving process. *Id.*

Similarly, in the present case, Givens filed a complaint on November 23, 1992 and for the next four to five months, he did not attempt to serve Quinn. Later, Givens' first attempt at serving Quinn was unsuccessful and process was returned on April 12, 1993. Givens made two more attempts and on July 2, 1993, Givens successfully served Quinn. It took Givens more than seven months to finally obtain service on Quinn. Quinn, like Givens, is known nationally and Givens should not have had a problem serving Quinn at either her work or home in New York. The court recognizes that Quinn does not complain that the undue delay in any way prejudiced her, but this is only one factor for the court to consider. If prejudice was the touchstone for determining whether a plaintiff exercised due diligence, the other factors would be irrelevant. Givens took over seven months to serve Quinn, did not provide the court for any reasons why he waited four to five months before even attempting service and should not have had great difficulty in serving a nationally known figure. Given these factors, Givens did not exercise due diligence in serving the original complaint and summons. Because Givens did not serve process with due diligence, the filing of the original complaint did not stop the running of the one-year statute of limitations. Thus, the statute of limitations now bars Givens from claiming that the November 21, 1991 syndicated column contain libelous statements.

### III. Conclusion

It is therefore ORDERED that Jane Bryant Quinn's Motion to Dismiss is DENIED. It is further

ORDERED that the first count of the first amended complaint which alleges that the November 21, 1991 syndicated column contains libelous statements is DISMISSED. It is further

ORDERED that this court will continue to exercise jurisdiction as to the remaining counts of the first amended complaint. It is further

ORDERED that in any future motions asking the court to make substantive ruling on the remaining counts of the first amended complaint, the parties shall brief the court as to which state's law this court should apply to each of the remaining counts.