# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 10-1362

_____

| | |
|---|---|
| James Joyce, | * |
| | * |
| Appellant, | * |
| | * Appeal from the United States |
| v. | * District Court for the |
| | * Eastern District of Missouri. |
| Armstrong Teasdale, LLP, | * |
| | * |
| Appellee. | * |

_____

Submitted: September 23, 2010
Filed: March 29, 2011

_____

Before BYE, BEAM, and SMITH, Circuit Judges.

_____

BYE, Circuit Judge.

On September 12, 2008, James Joyce sued Armstrong Teasdale, LLP, alleging it had breached a fiduciary duty the law firm owed to him. At the same time the law firm represented Joyce individually, it prepared several documents for TechGuard Security, L.L.C. (a company Joyce formed with his wife) granting TechGuard an exclusive license to sell certain computer firewall technology Joyce had invented. Joyce later lost half of the patent rights to his invention when he and his wife divorced. The district court concluded Joyce's alleged claim accrued on January 1, 2001, at the moment he signed the license agreement, and dismissed Joyce's complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure based on the ground it was barred by the five-year statute of limitations applicable to legal malpractice claims

in Missouri.  <u>See</u> Mo. Rev. Stat. § 516.120(4).  Joyce appeals arguing he did not reasonably discover his injury at the moment he executed the license agreement.  We agree, and therefore reverse and remand for further proceedings.

I

Our factual recitation tracks the allegations in Joyce's complaint,[1] keeping in mind we are "bound to accept as true, for purposes of [a Rule 12(b)(6)] motion, the facts alleged by the plaintiff."  <u>Stephens v. Associated Dry Goods Corp.</u>, 805 F.2d 812, 814 (8th Cir. 1986).

At some point prior to 2000, Joyce invented a new computer firewall technology which he called the Heuristic Firewall.  "This Heuristic Firewall more efficiently detects attacks on computer networks within real time to reduce losses from external attacks by foiling a broader range of attacks, extends the abilities of firewalls and increases performance of computer networks."  Joyce's First Amended Complaint at ¶ 5.  In February 2000, Joyce and his then-wife, Suzanne Magee Joyce (Magee), formed a limited liability company, TechGuard, for the purpose of marketing and selling the new technology.

TechGuard's initial ownership was divided between Joyce (3.9 million units), Magee (4.9 million units), and another married couple, Andrea Johnson (one million units) and Jefferey Johnson (300,000 units), so that TechGuard could be certified as a small disadvantaged business with the Small Business Administration (SBA).  After the SBA rejected TechGuard's application for certification, Joyce transferred 700,000 units of his ownership to Andrea Johnson, who also received Jefferey Johnson's entire

---

[1]The original complaint filed on September 12, 2008, was subsequently amended, and it was the first amended complaint which was dismissed by the district court.  Any references we make to the complaint refer to the first amended complaint.

ownership interest. TechGuard then received the necessary certification from the SBA and qualified for obtaining government contracts.

The Armstrong Teasdale firm provided legal services to help establish TechGuard. Armstrong Teasdale also represented the company after it was formed. The firm's representation included the provision of legal services associated with the economic exploitation of Joyce's computer firewall technology. Armstrong Teasdale represented TechGuard from the date of its formation through 2008. During the time Armstrong Teasdale represented TechGuard, the firm also represented Joyce, individually, in applying for a patent on his Heuristic Firewall technology. Joyce alleges Armstrong Teasdale represented him in an individual capacity from April 14, 2000, through February 11, 2003, the day his patent was granted. Joyce alleges the firm represented him again in February 2006 by filing a provisional application for a patent which involved the expansion and development of the Heuristic Firewall. The firm represented Joyce an additional time in November 2006 when it filed an actual patent based upon the expansion and development of the Heuristic Firewall.

While representing both Joyce and TechGuard, Armstrong Teasdale prepared three documents – the Confidentiality and Invention Rights Agreement, the Transfer Agreement, and the Patent License Agreement – on behalf of TechGuard. The three documents relate to TechGuard's exclusive right to use and sell Joyce's computer firewall technology. Both Joyce and TechGuard signed the Patent License Agreement, the last of the three documents, on January 1, 2001. Armstrong Teasdale advised Joyce to sign the Patent License Agreement and told him it was not necessary for him to have separate legal counsel. Armstrong Teasdale also advised Joyce as to his rights in the Heuristic Firewall being sufficiently protected because he and Magee were majority shareholders in TechGuard. At no time did Armstrong Teasdale inform Joyce it was only representing TechGuard with respect to the three documents granting TechGuard the exclusive right to use and sell the Heuristic Firewall

technology, or that he should consult with other legal counsel before signing the three agreements.

In 2003, TechGuard had the Heuristic Firewall technology valued by a company specializing in the valuation of computer technology. At that time, the licensing royalty value of Joyce's invention was estimated in the high hundreds of millions of dollars. TechGuard did not, however, make its first sale of Joyce's patented Heuristic Firewall until sometime in 2005. Joyce quit working for TechGuard shortly thereafter in 2006. In 2007, Joyce and Magee divorced. In the divorce decree, Magee was awarded 50% of the Heuristic Firewall patent.

On September 12, 2008, Joyce brought this suit against Armstrong Teasdale. The complaint alleged, *inter alia*, as to Armstrong Teasdale having breached a fiduciary duty by acting in conflict with Joyce's interests in representing TechGuard with respect to the economic exploitation of his computer firewall technology. Joyce further alleged he was damaged by such breach of fiduciary duty, claiming he "has lost and will continue to lose considerable income from not having a proper and fair licensing agreement for the patented Heuristic Firewall technology and/or its improvement[.]" Id. at ¶ 29.

Armstrong Teasdale filed a motion to dismiss Joyce's complaint pursuant to Rule 12(b)(6). Armstrong Teasdale argued Joyce's claim was barred by Missouri's five-year statute of limitations for legal malpractice claims. See Mo. Rev. Stat. § 516.120(4). Armstrong Teasdale argued the wrongdoing and damage alleged in Joyce's complaint flowed entirely from the three agreements (the transfer agreement, confidentiality and invention rights agreement, and patent license agreement), all of which were signed more than five years before Joyce filed this action. The district court concluded Joyce's damages were ascertainable when he signed the license agreement on January 1, 2001, because it was obvious based on the plain language of the agreements Joyce relinquished all rights to his computer firewall technology. The

-4-

district court granted Armstrong Teasdale's motion to dismiss. Joyce filed this timely appeal.

## II

As a general rule, "the possible existence of a statute of limitations defense is not ordinarily a ground for Rule 12(b)(6) dismissal unless the complaint itself establishes the defense." Jessie v. Potter, 516 F.3d 709, 713 n.2 (8th Cir. 2008) (citing Varner v. Peterson Farms, 371 F.3d 1011, 1017-18 (8th Cir. 2004)). The district court concluded Joyce's complaint established the statute of limitations had run on his claim. We review such conclusion de novo. Krentz v. Robertson, 228 F.3d 897, 905 (8th Cir. 2000).

In Missouri, the limitations period does not begin to run at the time of the wrongdoing, but when the damages from the wrong are incurred and are reasonably capable of being ascertained by the injured party. See Mo. Rev. Stat. § 516.100 ("[F]or the purposes of [§ 516.120], the cause of action shall not be deemed to accrue when the wrong is done . . . but when the damage resulting therefrom is sustained and is capable of ascertainment."). Missouri courts have interpreted this statute to mean the limitations period commences when a "reasonably prudent person [is] on notice of a potentially actionable injury." Powel v. Chaminade Coll. Preparatory, Inc., 197 S.W.3d 576, 582 (Mo. 2006).

Armstrong Teasdale argues the complaint itself establishes a statute of limitations defense. The law firm contends Joyce was on notice of a potentially actionable injury at the very moment he signed the agreements because their effect – the transfer of his rights to TechGuard – could be gleaned from the agreements' obvious language and would therefore be ascertainable to a reasonably prudent person upon the signing of such agreements. We disagree as to Joyce's knowledge of the

effect of the agreements, standing alone, serving as notice of a potentially actionable injury under the circumstances pleaded in Joyce's complaint.

Joyce, of course, knew the effect of the agreements was to transfer his rights in the Heuristic Firewall to TechGuard. To prevail on its statute of limitations defense, however, Armstrong Teasdale must prove a reasonably prudent person in Joyce's position would not only know the effect of the agreements, but would also know the effect of the agreements would give rise to a potentially actionable injury. Armstrong Teasdale cannot prove such a point based on the complaint itself because Joyce alleged Armstrong Teasdale advised him at the time he signed the agreement he *would not* be injured. The complaint specifically states "[t]he Defendant Armstrong Teasdale attorney also told [Joyce] that since [Joyce] and his then wife were majority shareholders, that his interests in the Heuristic Firewall were sufficiently protected." First Amended Complaint at ¶ 19.

Armstrong Teasdale represented Joyce when the firm allegedly told him he would not be injured by signing the agreements, and thus he had a right to rely upon such representation. During the course of an attorney-client relationship, Missouri does not impose upon a layperson the duty to double-check the attorney's work or to understand that an attorney's conduct caused harm unless a source external to the attorney-client relationship reasonably puts the layperson on notice the attorney has caused harm. See Klemme v. Best, 941 S.W.2d 493, 497 (Mo. 1997) (indicating the plaintiff "was under no duty to double check [his attorney's] work as long as [he] was his attorney" and concluding the statute of limitations did not begin to run until the plaintiff retained separate counsel and "the fact of damage could have been discovered or made known."); Zero Mfg. Co. v. Husch, 743 S.W.2d 439, 441 (Mo. Ct. App. 1987) (indicating a plaintiff was reasonably put on notice of his contract attorney's wrongdoing only after opposing counsel identified the error in the ensuing contract negotiations); see also Wright v. Campbell, 277 S.W.3d 771, 777 (Mo. Ct. App. 2009) ("In the absence of any known or reasonably knowable circumstances which would

impose on the client a duty to double-check the attorney's proper performance of his professional obligations, the mere passage of a mandatory time deadline on an underlying claim is not sufficient to commence the limitations period on a legal malpractice action.").

Joyce filed his complaint on September 12, 2008. Thus, in order to prevail on its statute of limitations defense, Armstrong Teasdale has to prove Joyce's cause of action accrued more than five years prior to that date. The complaint itself does not establish such a fact. The complaint does indicate Armstrong Teasdale represented Joyce in a personal capacity from April 2000 through February 2003, and again in February 2006 and November 2006. The complaint further alleges Armstrong Teasdale told Joyce that signing the agreements would not cause him harm. Armstrong Teasdale represented Joyce at the time it is alleged to have told him he would not be harmed by signing the agreements, and nothing in the complaint establishes that a source outside of Joyce's attorney-client relationship has put Joyce on notice that signing the agreements would cause him harm. As a result, Armstrong Teasdale has not shown – at least at the Rule 12(b)(6) stage – that Joyce's cause of action accrued more than five years before it was filed.

III

We reverse and remand for further proceedings.

_____