# United States Court of Appeals

### For the Eighth Circuit

_____

No. 15-3635

_____

Jon David Couzens, Jr.

*Plaintiff - Appellant*

v.

William Donohue, individually; Catholic League for Religious and Civil Rights, a not for profit foreign corporation; KC Catholic League, Inc. a not for profit corporation; Joe McLiney, individually and in his capacity as President, Director and Member of KC Catholic League, Inc.; James E. O'Laughlin, individually and in his Capacity Secretary, Director and Member of KC Catholic League, Inc.

*Defendants - Appellees*

_____

Appeal from United States District Court
for the Western District of Missouri - Kansas City

_____

Submitted: November 15, 2016
Filed: April 18, 2017

_____

Before RILEY,[1] Chief Judge, WOLLMAN and KELLY, Circuit Judges.

_____

WOLLMAN, Circuit Judge.

_____

[1]The Honorable William Jay Riley stepped down as Chief Judge of the United States Court of Appeals for the Eighth Circuit at the close of business on March 10, 2017. He has been succeeded by the Honorable Lavenski R. Smith.

Jon David Couzens, Jr., filed suit against William Donohue, the Catholic League for Religious and Civil Rights (the Catholic League), KC Catholic League, Inc. (KCCL), Joe McLiney, and James E. O'Laughlin (collectively, Defendants) in Missouri state court. Couzens's petition set forth claims of defamation, invasion of privacy, and intentional and negligent infliction of emotional distress, alleging that Defendants published false information to discredit and humiliate him in retaliation for Couzens's public allegations that he was sexually abused by priests. Defendants removed the case to federal district court. Couzens appeals from the district court's[2] orders denying his motion to remand and dismissing his causes of action for failure to state a claim upon which relief could be granted. We affirm.

## I. Background

Our recitation of the facts of this case accepts as true the factual allegations in Couzens's petition. Joyce v. Armstrong Teasdale, LLP, 635 F.3d 364, 365 (8th Cir. 2011). Couzens is a Missouri citizen, Donohue and the Catholic League are New York citizens,[3] KCCL is a Kansas citizen, and McLiney and O'Laughlin, both of whom are directors of KCCL, are Missouri citizens. In 2011, Couzens reported that he had been sexually abused and had witnessed sexual abuse by priests in Independence, Missouri. He filed a lawsuit against the two individual priests, a diocese, and a monastery. He also described the abuse in a series of articles published by a Kansas City newspaper, the last of which was published on or about December

[2]The Honorable Howard F. Sachs, United States District Judge for the Western District of Missouri.

[3]Donohue and the Catholic League stated in their notice of removal that the Catholic League is incorporated in the state of California, but this fact would not affect jurisdiction.

6, 2011. That same day, the Catholic League issued a statement by Donohue regarding Couzens's testimony in a 1992 murder trial:

[The author of the recent newspaper articles] never told readers that on the night [the victim] was murdered about a dozen years ago, Couzens got into a fight with him over a botched drug deal, and although another man was convicted, on appeal it was alleged that Couzens and two other men had "motive to commit the murder and the opportunity to do so."[4]

On December 8, 2011, the Catholic League issued another statement: "Couzens may be a hero to the [newspaper], but his character is indeed questionable: he was implicated in a murder." The same article also suggested that Couzens was telling his story only to capitalize on the publicity from a recent sexual-abuse scandal involving a priest: "Why did Couzens wait 30 years before he told his 'wrenching' tale? Because the time was ripe to cash in after Fr. Ratigan's name hit the papers." Donohue, the Catholic League, and KCCL distributed these statements, as well as the assertion (in the words of Couzens's petition) that Couzens is "a Catholic hating bigot," throughout the Kansas City community. The allegations against Couzens have been posted on the websites of the Catholic League and KCCL. The petition states that the allegations that Couzens was officially implicated in the murder, that he engaged in a "botched drug deal," and that he is a "Catholic hating bigot" are false.

The district court denied Couzens's motion to remand after concluding that Missouri defendants McLiney and O'Laughlin were fraudulently joined. Donohue

---

[4]Couzens had testified against the defendant in a murder trial, James Eric Mansfield, who was convicted and petitioned for habeas corpus relief. The district court denied Mansfield's petition and we affirmed, and in the course of doing so we discussed Mansfield's attempt at trial to implicate Couzens and another witness. Mansfield v. Dormire, 202 F.3d 1018, 1021 n.3 (8th Cir. 2000); see also id. at 1024-25 (Heaney, J., dissenting).

and the Catholic League thereafter moved to dismiss the case under Federal Rule of Civil Procedure 12(b)(6). They argued that the one-year New York statute of limitations applied to Couzens's defamation claim because, according to Donohue's affidavit in support of the motion to dismiss, the allegedly defamatory statements were first published in New York.[5] Accordingly, they argued, Missouri's borrowing statute required the application of New York's statute of limitations because Couzens's defamation claim originated in New York. Donohue and the Catholic League also argued that Missouri law does not recognize Couzens's invasion-of-privacy claim and that the petition failed to state facts to support claims of intentional or negligent infliction of emotional distress. The court granted the motion to dismiss, dismissed the claims against the fraudulently joined defendants, and later dismissed the claims against KCCL for failure to prosecute.

## II. Discussion

### A. Removal

We review de novo the district court's denial of Couzens's motion to remand. Christiansen v. W. Branch Cmty. Sch. Dist., 674 F.3d 927, 932 (8th Cir. 2012). Couzens asserted only tort claims under Missouri law, and no party argues that this

---

[5]Donohue attested that the allegedly defamatory statements were "printed, edited, distributed and/or published via a news release in New York, New York." Couzens's petition did not specify where the statements were first published: it alleged that Donohue and the Catholic League, both New York citizens, "issued a statement," "issued another statement," and "continued to publish these statements," and that "[c]opies of the statements Donohue made about Couzens were distributed to churches" including a church in Missouri whose parishioners know Couzens. The petition also alleged that the statements "have remained posted" on the Catholic League's and KCCL's websites.

case presents a federal question. Accordingly, diversity jurisdiction under 28 U.S.C. § 1332 constitutes the only basis for subject matter jurisdiction in this case.

### 1. Fraudulent Joinder of McLiney and O'Laughlin

Couzens argues that the district court erred in determining that Missouri defendants McLiney and O'Laughlin were fraudulently joined. He contends that he sued McLiney and O'Laughlin as trustees of KCCL and that he could not sue KCCL directly because it was a forfeited corporation. KCCL, however, is a Kansas corporation, and Kansas law provides for a three-year wind-up period during which a corporation may be sued in its own name. Kan. Stat. Ann. § 17-6807; see Keystone Agency, Inc. v. Herrin, 585 S.W.2d 313, 314 (Mo. Ct. App. 1979) (concluding that a Nebraska corporation's dissolution was governed by Nebraska law). Moreover, even if Missouri law applied, Couzens could have sued KCCL because it was reinstated as a corporation in 2014.[6] See Mo. Rev. Stat. § 351.488(3) (providing that when the secretary of state grants a dissolved corporation a certificate of reinstatement, "it relates back to and takes effect as of the effective date of the administrative dissolution and the corporation resumes carrying on its business as if the administrative dissolution had never occurred").

We reject Couzens's argument that McLiney and O'Laughlin were properly joined in their individual capacities. Although the caption of the petition names McLiney and O'Laughlin in both their individual and representative capacities, and paragraph 8 of the petition states that the district court has jurisdiction over them in

---

[6]We have taken judicial notice of publicly available records from the Kansas Secretary of State that show that KCCL was reinstated on January 27, 2014. We note that Couzens relied on Clark Estate Co. v. Gentry, 240 S.W.2d 124, 127 (Mo. 1951), to support his argument that he could not sue a dissolved corporation. Clark, however, was based on a statutory scheme that has since been modified.

their individual capacities, the petition sets forth no factual allegations against McLiney or O'Laughlin as individuals and instead alleges that KCCL republished and distributed the defamatory statements. Because Couzens protests KCCL's alleged conduct and not McLiney's or O'Laughlin's, we affirm the district court's determination that the Missouri defendants were fraudulently joined. See Filla v. Norfolk S. Ry. Co., 336 F.3d 806, 810 (8th Cir. 2003) ("[J]oinder is fraudulent when there exists no reasonable basis in fact and law supporting a claim against the resident defendants." (quoting Wiles v. Capitol Indem. Corp., 280 F.3d 868, 871 (8th Cir. 2002))).

We also agree with the district court's conclusion that because McLiney and O'Laughlin were fraudulently joined, their consent was not needed for removal. See Bradley Timberland Res. v. Bradley Lumber Co., 712 F.3d 401, 404-05 (8th Cir. 2013) (noting district court's holding that a party "had been fraudulently joined to defeat diversity jurisdiction and that its consent to removal was therefore not required," and affirming denial of motion to remand because joinder was fraudulent). Likewise, because the Missouri defendants were fraudulently joined, the forum-defendant rule, 28 U.S.C. § 1441(b)(2), did not prohibit removal. Newby v. Wyeth, Inc., No. 4:11CV00339 AGF, 2011 WL 5024572, at *2 (E.D. Mo. Oct. 21, 2011) ("When, as here, the basis for removing a case is diversity jurisdiction and the face of the complaint lacks complete diversity, in that the plaintiff has joined a non-diverse party or a resident of the forum state as a defendant, the removing party may avoid remand only by demonstrating that the non-diverse party was fraudulently joined." (citing Filla, 336 F.3d at 809)).

2. Timeliness of KCCL's Consent to Removal

Couzens also contends that because KCCL's consent to removal was untimely, the district court erred in denying his motion to remand. All defendants in a suit who

-6-

have been properly joined and served must consent to removal. 28 U.S.C. § 1446(b)(2)(A). Generally, each defendant must consent to removal within thirty days after being served with the initial pleading. Id. § 1446(b)(2)(B). When defendants are served at different times, however, an earlier-served defendant may consent to a later-served defendant's timely removal even if the earlier-served defendant did not file a notice of removal within thirty days of its own service. Id. § 1446(b)(2)(C).

Donohue and the Catholic League were served with Couzens's petition on February 18, 2014, which was later than the service on other Defendants. They timely filed their notice of removal on March 14, 2014. The notice did not indicate whether KCCL had consented to removal. On April 4, 2014, Donohue and the Catholic League filed their motion to dismiss, which argued in part that federal jurisdiction was proper, and to which they attached a declaration by KCCL through its director Ernie Straub. Couzens moved to remand on April 14, 2014, and KCCL filed its consent to removal the next day, thirty-one days after Donohue and the Catholic League filed their notice of removal, as time is computed under Federal Rule of Civil Procedure 6(a). KCCL stated that Donohue and the Catholic League had obtained KCCL's consent prior to filing their notice of removal.[7]

Although Couzens argues that KCCL's consent was untimely because it was filed more than thirty days after Donohue and the Catholic League's notice of

_____

[7]KCCL also noted in its consent to removal that Donohue and the Catholic League filed their initial notice of filing of the notice of removal in state court on March 14, 2014, to which they evidently neglected to attach their notice of removal, but filed an amended notice of filing of notice of removal in state court on March 17, 2014, to which they attached their notice of removal. The amendment of the notice of filing of notice of removal filed in state court does not affect any of the pertinent time limits.

removal, the time frame for an earlier-served defendant to consent to a later-served defendant's notice of removal under § 1446(b)(2)(C) is unclear. In Griffioen v. Cedar Rapids & Iowa City Railway Co., we stated:

> The 2011 amendments to § 1446 that codified the rule of unanimity did not describe the form of or time frame for consent when multiple defendants are involved. By comparison, § 1446 as amended lays out in detail the procedures for the notice of removal, including the form of the notice and the time frame for each defendant to file it in a multiple-defendant action. Congress could have defined with equal specificity the form of or time for consent but chose not to do so. Its failure to do so dissuades us from adopting a rule that places form over substance.

785 F.3d 1182, 1187 (8th Cir. 2015). We held, in a case predating § 1446(b)(2)(C), that "the later-served defendants . . . had thirty days from the date of service on them to file a notice of removal with the unanimous consent of their co-defendants." Marano Enters. of Kan. v. Z-Teca Rests., L.P., 254 F.3d 753, 757 (8th Cir. 2001). But we have not decided the time limit for consent to removal under § 1446(b)(2)(C). Other courts have reached differing conclusions on this question. Gaynor v. Miller, Nos.: 3:15-CV-545-TAV-CCS, 3:15-CV-546-TAV-CCS, 2016 WL 6078340, at *3 (E.D. Tenn. Sept. 8, 2016) (holding that consent to removal need not be filed within thirty days under the plain language of § 1446(b)(2)(C), and establishing no specific time limit); Gibbs v. Ocwen Loan Servicing, LLC, No. 3:14-CV-1153-M-BN, 2014 WL 2767206, at *2 (N.D. Tex. June 18, 2014) (holding that consent to removal under § 1446(b)(2)(C) must be filed within the later-served defendant's thirty-day removal period); Pattison v. Nevada ex rel. Nev. Dep't of Corr., No. 3:14-cv-00020-MMD-VPC, 2014 WL 2506467, at *3 (D. Nev. June 3, 2014) (holding that consent to removal must be filed within thirty days of the filing of the later-served defendant's notice of removal); Moore v. Svehlak, Civil Action No. ELH-12-2727, 2013 WL 3683838, at *14 (D. Md. July 11, 2013) (holding that consent to removal must be

filed either within the earlier-served defendant's own thirty-day removal window or concurrently with the later-served defendant's notice of removal).

We decline to specify in this case the time limit for consent to removal under § 1446(b)(2)(C). Although we "emphasize that non-removing defendants who wish to evince consent to removal should either sign the notice of removal or file a timely and unequivocal consent," Christiansen, 674 F.3d at 933, we conclude that KCCL's consent to removal was sufficient. KCCL filed its consent to removal thirty-one days after Donohue and the Catholic League filed their notice of removal, and one day after Couzens filed his motion to remand. KCCL later attested that Donohue and the Catholic League had obtained KCCL's consent prior to removal. Cf. Griffioen, 785 F.3d at 1188 (holding that non-removing defendant sufficiently consented when the notice of removal stated that the non-removing defendant had consented and the non-removing defendant later ratified that statement). Twenty-one days after Donohue and the Catholic League filed their notice of removal, KCCL submitted an affidavit with Donohue and the Catholic League's motion to dismiss, with the motion arguing in part that federal jurisdiction was proper. Cf. Christiansen, 674 F.3d at 933 (holding that consent was sufficient when non-removing defendant implicitly consented to removal in its motion to dismiss and later filed an untimely consent to removal). Accordingly, in light of our reluctance to apply the unanimity requirement in a "hypertechnical and unrealistic manner," Griffioen, 785 F.3d at 1187 (quoting Christiansen, 674 F.3d at 933), we hold that KCCL sufficiently consented to removal.

## B. Dismissal

We review de novo the grant of a motion to dismiss for failure to state a claim. Minn. Majority v. Mansky, 708 F.3d 1051, 1055 (8th Cir. 2013). We assume that the factual allegations set forth in Couzens's petition are true and draw all reasonable inferences in favor of Couzens. Id. "Although a complaint need not contain 'detailed

factual allegations,' it must contain facts with enough specificity 'to raise a right to relief above the speculative level.'" Id. (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)).

### 1. Defamation

Couzens argues that the district court erred in concluding that his defamation claim was time-barred under New York's one-year statute of limitations. See N.Y. C.P.L.R. § 215 (one-year statute of limitations for defamation claims). He contends that his defamation claim was timely because Missouri's two-year statute of limitations applies. See Mo. Rev. Stat. § 516.140 (two-year statute of limitations for defamation claims). Under Missouri law, "[w]henever a cause of action has been fully barred by the laws of the state, territory or country in which it originated, said bar shall be a complete defense to any action thereon, brought in any of the courts of this state." Mo. Rev. Stat. § 516.190. The term "originated" within this statute has been defined to mean "accrued." Patch v. Playboy Enters., Inc., 652 F.2d 754, 755 n.5 (8th Cir. 1981) (per curiam). A cause of action for defamation originates "in the state where the allegedly [defamatory] statement is first published." Finnegan v. Squire Publishers, Inc., 765 S.W.2d 703, 704 (Mo. Ct. App. 1989). In the context of mass-media communications, publication under Missouri's borrowing statute occurs when a statement becomes "available to the general public."[8] Givens v. Quinn, 877 F. Supp. 485, 491 (W.D. Mo. 1994) (quoting Summers v. Washington Times, Civ. A. No. 93-0480-LFO, 1993 WL 391047, at *1 (D.D.C. Sept. 20, 1993)).

---

[8]The court noted that "[i]n the legal sense, publication is the intentional or negligent communication of defamatory statements to a person other than the one defamed," but judged the "available to the general public" standard to be more appropriate in the mass-media context. Givens, 877 F. Supp. at 491.

Couzens argues that the district court improperly converted Donohue and the Catholic League's motion to dismiss into a motion for summary judgment when it relied upon Donohue's affidavit, which stated that the allegedly defamatory statements were first published in New York. See Country Club Estates, L.L.C. v. Town of Loma Linda, 213 F.3d 1001, 1005 (8th Cir. 2000) (holding that consideration of materials outside the complaint converts a motion to dismiss into a motion for summary judgment and entitles the nonmoving party to notice of the conversion). "As a general rule, 'the possible existence of a statute of limitations defense is not ordinarily a ground for Rule 12(b)(6) dismissal unless the complaint itself establishes the defense.'" Joyce, 635 F.3d at 367 (quoting Jessie v. Potter, 516 F.3d 709, 713 n.2 (8th Cir. 2008)). But "[s]ome materials that are part of the public record or do not contradict the complaint may be considered by a court in deciding a Rule 12(b)(6) motion." Levy v. Ohl, 477 F.3d 988, 991 (8th Cir. 2007) (quoting Missouri ex rel. Nixon v. Coeur D'Alene Tribe, 164 F.3d 1102, 1107 (8th Cir. 1999)). Couzens's petition does not allege where the statements were first published. Moreover, Couzens did not claim in the district court that the statements were first published in a location other than New York.[9] Because Donohue's affidavit did not contradict the petition, we hold that the district court did not err in relying on it.

Couzens argues that the Missouri statute of limitations applies to his defamation claim because, in cases involving publication of defamatory statements on the Internet, the state where the defamed party suffered injury typically determines the applicable law. He reasons that Defendants are subject to personal jurisdiction in Missouri because they purposefully directed their statements at Couzens with the knowledge that he would suffer reputational injury in Missouri, see Baldwin v.

_____

[9]We do not consider Couzens's newly raised assertion that the statements might have been first printed in Wisconsin. See Shanklin v. Fitzgerald, 397 F.3d 596, 601 (8th Cir. 2005) ("Absent exceptional circumstances, we cannot consider issues not raised in the district court.").

Fischer-Smith, 315 S.W.3d 389, 392-98 (Mo. Ct. App. 2010), and that the Missouri statute of limitations applies to his defamation claim under choice-of-law principles because Missouri, as Couzens's state of residence and the state in which he suffered reputational injury, bears the "most significant relationship" to the claim, see Fuqua Homes, Inc. v. Beattie, 388 F.3d 618, 621-22 (8th Cir. 2004). Couzens seems to argue that personal-jurisdiction and choice-of-law principles should be applied to determine the state in which a cause of action for defamation "originates" under Missouri's borrowing statute, but this contention has already been rejected. See Patch, 652 F.2d at 756-58; Finnegan, 765 S.W.2d at 707.[10]

Alternatively, Couzens seems to argue that Missouri's borrowing statute should not apply at all because statements first published on the Internet become available in every state almost instantaneously and thus it is impossible to determine the state in which they were "first published" for purposes of the borrowing statute. If the borrowing statute does not apply, Couzens contends that we should consider personal-jurisdiction and choice-of-law principles to decide which state's statute of limitations applies. We reject the contention that the borrowing statute cannot be applied in this case, in light of the uncontradicted statement that the allegedly defamatory statements were "printed, edited, distributed and/or published via a news release in New York, New York." Cf. Patch, 652 F.2d at 755 ("Playboy argues that

---

[10]We also reject Couzens's argument that under Thompson by Thompson v. Crawford, 833 S.W.2d 868 (Mo. 1992), the state whose law applies under choice-of-law principles will also have its statute of limitations applied under Missouri's borrowing statute. The court in that case determined that Tennessee's substantive law applied to a wrongful death action under choice-of-law principles and separately determined that Tennessee's statute of limitations applied under Missouri's borrowing statute; it did not conflate the two inquiries. Id. at 870-71. Further, that the state in which the injury occurred determined the applicable statute of limitations in Thompson has no bearing upon this case, because, as discussed earlier, defamation claims "originate" in the state where the statements are first published.

the claim originated in Illinois because Playboy (1) has its principle place of business in Chicago, (2) edited, assembled, and printed the February 1976 issue there, and (3) distributed the article to its readers from Chicago."); Givens, 877 F. Supp. at 491 n.7 ("Even if Missouri would look to the state where, academically, the statements were first published, the court would still apply a one-year statute of limitations. New York, [defendant's] residence, and the District of Columbia, where [defendant's] syndicator is located, both apply a one-year statute of limitations in libel cases."). Accordingly, we affirm the district court's dismissal of Couzens's defamation claim as time-barred under Missouri's borrowing statute.

## 2. Invasion of Privacy

Couzens contends that the district court erred when it dismissed his invasion-of-privacy claim on the ground that Missouri does not recognize a cause of action for false light invasion of privacy. Couzens cites Meyerkord v. Zipatoni Co., 276 S.W.3d 319, 324-25 (Mo. Ct. App. 2008), for the proposition that Missouri recognizes such a cause of action. But in Farrow v. Saint Francis Medical Center, the Missouri Supreme Court concluded that when a plaintiff seeks "to protect her reputation in the outside world," rather than the plaintiff's interest in being "left alone," the plaintiff has a cause of action for defamation, not invasion of privacy. 407 S.W.3d 579, 602 (Mo. 2013). In Cockram v. Genesco, Inc., we concluded that, whatever Meyerkord's fact-based holding, the Missouri Supreme Court would not recognize a cause of action for false light invasion of privacy in a situation in which, as in Cockram, the plaintiff "sought to recover on her false light count for untrue statements that caused injury to her reputation." 680 F.3d 1046, 1057 (8th Cir. 2012) (emphasis omitted). Because Couzens alleged that the false statements injured his reputation, defamation, not invasion of privacy, was in fact the basis of his cause of action.

Couzens argues that even if Missouri does not recognize false light invasion of privacy, he has stated a claim for other forms of invasion of privacy. He contends that Donohue "did not simply publish untrue statements about [Couzens], he actively and physically delved into [Couzens's] life and worked to offend his privacy, separate and apart from the defamation." Appellant's Br. 50. Couzens states that Donohue conducted an extensive public-relations smear campaign, targeted at many groups in the Kansas City community, supporting priests accused of sexual abuse and chastising their accusers. He argues that this case is thus analogous to Hester v. Barnett, 723 S.W.2d 544 (Mo. Ct. App. 1987). As alleged in that case, a minister gained entry into the plaintiffs' home by offering family-counseling services and thereafter used the information he acquired to publicly, falsely present the plaintiffs as abusive parents. Id. at 550. The Hester court held that the petition alleged an invasion of privacy claim for intrusion upon seclusion because the minister gained access to the plaintiffs' home under false pretenses and harmed them with the thus-gained information. Id. at 563. But the court also held that the petition did not state claims for tortious publication of private facts or false light invasion of privacy, emphasizing that "[w]here the claim for recovery on either theory . . . involves untrue statements, the appropriate remedy is by defamation." Id. (emphasis omitted). Here, Couzens's petition alleges that Donohue invaded his privacy by communicating false statements about him to the Kansas City community, for which defamation is the proper remedy under Missouri law. Accordingly, we affirm the dismissal of Couzens's invasion of privacy claim.

3. Infliction of Emotional Distress

Finally, Couzens argues that the district court erred in dismissing his claims for intentional infliction of emotional distress and negligent infliction of emotional distress. We affirm the dismissal of both claims. "In order to state an emotional distress claim, the plaintiff must plead extreme and outrageous conduct by a

-14-

defendant who intentionally or recklessly causes severe emotional distress that results in bodily harm." Nazeri v. Mo. Valley Coll., 860 S.W.2d 303, 316 (Mo. 1993). A claim for intentional infliction of emotional distress "does not lie when the offending conduct consists only of a defamation." Id. (emphasis omitted) (citing Hester, 723 S.W.2d at 561). As discussed above, Couzens alleged that Defendants spread false, harmful information about him to the Kansas City community. Thus, Couzens has only a defamation claim and not one for intentional infliction of emotional distress.

Likewise, Couzens has not stated a claim for negligent infliction of emotional distress. To state such a claim, a plaintiff must plead the general elements of negligence—that is, "a legal duty of the defendant to protect the plaintiff from injury," a breach of that duty, proximate cause, and injury—as well as two additional elements—"that the defendant should have realized that his conduct involved an unreasonable risk of causing distress" and "that the emotional distress or mental injury must be medically diagnosable and must be of sufficient severity so as to be medically significant." Thornburg v. Fed. Express Corp., 62 S.W.3d 421, 427 (Mo. Ct. App. 2001). The petition alleged only that "Defendants owed plaintiff a duty to not cause [him] damage by engaging in tortious and injurious actions." This general assertion does not describe a legally recognized duty. See id. (affirming dismissal because petition did not allege a legally recognized duty). The cases that Couzens cites to support recognition of such a broad duty are inapposite. See Hoover's Dairy, Inc. v. Mid-Am. Dairymen, Inc./Special Prods., Inc., 700 S.W.2d 426, 431-32 (Mo. 1985) (discussing whether knowledge that injury will result is required for duty); Bass v. Nooney Co., 646 S.W.2d 765, 766-74 (Mo. 1983) (applying the doctrine of *res ipsa loquitur* to case involving mental distress resulting from being trapped in a stalled elevator, and rejecting the requirement of physical injury to recover for negligent infliction of emotional distress). Accordingly, the district court properly dismissed Couzens's claim for negligent infliction of emotional distress.

The judgment is affirmed.

KELLY, Circuit Judge, concurring.

I write separately because I disagree with the court's conclusion that Donohue's affidavit does not contradict the complaint. In so concluding, the court notes that the complaint does not specify where the defamatory statements were published. Thus, the court explains, Donohue's allegation that the statements were published in New York does not contradict the complaint, and the district court did not err by relying on it in granting the motion to dismiss. But "the possible existence of a statute of limitations defense is not ordinarily a ground for Rule 12(b)(6) dismissal unless the complaint itself establishes the defense." Joyce, 635 F.3d at 367 (quoting Jessie, 516 F.3d at 713 n.2)). Furthermore, "a plaintiff need not plead facts responsive to an affirmative defense before it is raised." Braden v. Wal-Mart Stores Inc., 588 F.3d 585, 601 n.10 (8th Cir. 2009).

The complaint alleges that "[t]he Catholic League . . . and William Donohue have committed tortious acts within [Missouri] and Jackson County," and that "various tortious acts occurred and damages were first sustained by the Plaintiff" in Missouri. The "tortious act" underlying a defamation claim is the publication of a defamatory statement. See Overcast v. Billings Mut. Ins. Co., 11 S.W.3d 62, 70 (Mo. banc 2000) (listing elements of defamation). Though the allegations of the complaint are not particularly specific, accepting the factual allegations of the complaint as true and "constru[ing] all reasonable inferences from those facts most favorably to" Couzens, Minn. Majority, 708 F.3d at 1055, one can reasonably infer that the complaint charges that the statements were published in Missouri, and therefore that the complaint itself does not establish a statute of limitations defense, see Schmidt v. Skolas, 770 F.3d 241, 248 (3d Cir. 2014) ("[A] complaint does not fail to state a claim simply because it omits facts that would defeat a statute of limitations defense.").

The district court explicitly relied on Donohue's affidavit to find that the statements were published in New York and that Couzens' defamation claim was consequently time-barred. In my view, Donohue's affidavit—which is not a public record or embraced by the pleadings, and whose truth mandates the dismissal of Couzens' defamation claim—is most fairly described as contradictory to the complaint. I would therefore find that the district court erred in relying on Donohue's affidavit without converting the motion into one for summary judgment. See Fed. R. Civ. P. 12(d); Court v. Hall Cty., 725 F.2d 1170, 1172 (8th Cir. 1984) ("[I]f the defendant files an affidavit in support of a Rule 12(b)(6) motion to dismiss, the district court must treat the motion as one for summary judgment unless it decides to exclude the affidavit in considering the motion.").

However, "[c]onsideration of matters outside the pleading is harmless [and does not require reversal] where 'the nonmoving party had an adequate opportunity to respond to the motion and material facts were neither disputed nor missing from the record.'" BJC Health Sys. v. Columbia Cas. Co., 348 F.3d 685, 688 (8th Cir. 2003) (quoting Gibb v. Scott, 958 F.2d 814, 816 (8th Cir. 1992)); see Country Club Estates, 213 F.3d at 1005 (noting constructive notice that the district court will consider matters outside the pleading can be sufficient). Couzens had over four months to respond to the defendants' motion to dismiss. In his response, Couzens argued that the court should apply the statute of limitations of the place of injury, rather than the place of initial publication. However, Couzens did not dispute before the district court—or before this court—that the allegedly defamatory statements were "published" in New York, as that term is defined in our case law. See Patch, 652 F.2d at 756–57 (rejecting theory that a cause of action can originate in multiple locations based on where injury is suffered because such a rule would not effectuate the Missouri borrowing statute's anti-forum shopping purpose). Couzens did not attach any materials to his response or request to do so. Because Couzens had ample opportunity to respond to the defendants' motion and the record demonstrates no

disputed facts, I would find that the court's error was harmless. See Davis v. Johnson Controls, Inc., 21 F.3d 866, 867 (8th Cir. 1994) (finding any lack of formal notice that the district court would consider affidavits attached to alternative motion for summary judgment in ruling on motion to dismiss harmless given the plaintiff's adequate opportunity to respond and the absence of missing or disputed material facts); cf. Gibb, 958 F.2d at 817 (remanding when parties disputed the location of key events and the district court did not allow plaintiff an opportunity to provide further materials); BJC Health Sys., 348 F.3d at 688 (remanding when the record revealed disputed facts). For this reason, I concur.

_____