David H. MARLIN, Appellant,

v.

**DISTRICT OF COLUMBIA BOARD OF ELECTIONS AND ETHICS, Appellee.**

No. 99–7206.

United States Court of Appeals, District of Columbia Circuit.

Argued Sept. 15, 2000.

Decided Jan. 19, 2001.

Robert K. Kelner argued the cause for the appellant. Mark H. Lynch was on brief. Michael A. Dawson entered an appearance.

Rudolph McGann Jr. argued the cause for the appellee. Kenneth J. McGhie was on brief.

Before: HENDERSON, RANDOLPH and GARLAND, Circuit Judges.

Opinion for the court filed by Circuit Judge KAREN LeCRAFT HENDERSON.

KAREN LeCRAFT HENDERSON, Circuit Judge:

David H. Marlin appeals the district court's grant of summary judgment to the District of Columbia Board of Elections and Ethics (Board). Marlin brought this action alleging the Board's enforcement of polling place regulations to prohibit him from wearing a campaign sticker into his polling place on election day violates the First Amendment to the United States Constitution. We agree with the district court that the Board's enforcement reflects reasonable, viewpoint-neutral regulation of polling place speech and therefore does not violate the First Amendment.

Accordingly we affirm the district court's summary judgment.

## I.

The material facts are not in dispute. On September 15, 1998 Marlin, a resident and registered voter of the District of Columbia (District), went to his polling place to vote in a primary election while wearing a campaign sticker in support of mayoral candidate Anthony Williams. When Marlin attempted to turn in his completed ballot, an election worker informed him he "could not cast his ballot while wearing the sticker." Affidavit of David H. Marlin ¶ 10. After a second election worker accepted Marlin's ballot, the first worker told Marlin he would not be permitted to vote in the general election if he was wearing "any sticker, button, emblem, or clothing that showed support for a candidate." *Id.* After the primary Marlin and his counsel contacted the Board, which told Marlin's counsel that the District's election regulations, promulgated by the Board,[1] prohibited voters from wearing political paraphernalia inside a polling place but that, if Marlin insisted on wearing a campaign sticker, he would be permitted to vote curbside at the general election. Marlin wore a sticker and voted curbside on November 3, 1998.

Meanwhile, on October 23, 1998 Marlin filed this action in the district court challenging the Board's enforcement of the regulations. In a memorandum opinion and order filed September 8, 1999 the district court granted summary judgment in favor of the Board. Marlin appealed.

## II.

Marlin challenges two District election regulations. The first provides:

No partisan or nonpartisan political activity, or any other activity which, in the judgment of the Precinct Captain, may directly or indirectly interfere with the orderly conduct of the election, shall be permitted in, on, or within a reasonable distance outside the building used as a polling or vote counting place.

3 D.C.M.R. § 708.4. The second defines "political activity" to "include without limitation, any activity intended to persuade a person to vote for or against any candidate or measure or to desist from voting." 3 D.C.M.R. § 708.8. Marlin contends the Board's enforcement of these regulations to prevent him from wearing a political sticker when voting inside the polling place is an unjustified restriction of his right to free expression under the First Amendment.[2] The district court held that the political activity ban is a reasonable viewpoint-neutral regulation of a non-public forum and therefore does not violate the First Amendment. We agree.

The United States Supreme Court has identified three types of fora: the traditional public forum, the public forum created by government designation, and the nonpublic forum. Traditional public fora are those places which "by long tradition or by government fiat have been devoted to assembly and debate." [*Perry Educ. Assn. v. Perry Local Educators' Assn.*, 460 U.S. 37, 45, 103 S.Ct. 948, 74 L.Ed.2d 794 (1983)]. Public streets and parks fall into this category. See *Hague v. CIO*, 307 U.S. 496, 515, 59 S.Ct. 954, 963, 83 L.Ed. 1423 (1939). In addition to traditional public fora, a public forum may be created by government designation of a place or channel of communication for use by the public at large for assembly and speech, for use by certain speakers, or for the discussion of certain subjects. *Perry Education Assn., supra,* 460 U.S. at 45 and 46, n. 7, 103

---

1. The Board is authorized by statute to promulgate regulations governing conduct of elections. *See* D.C.Code Ann. § 1–1324.

2. Although section 708.4 broadly prohibits political activity "in, on, or within a reasonable distance outside" a polling place, Marlin challenges the regulation only as applied, that is, to prevent him from wearing the sticker inside the polling place. In addition, the Board's counsel assured the district court that its policy is to enforce the ban only "inside the polling place." JA 102.

S.Ct. at 955, n. 7. Of course, the government "is not required to indefinitely retain the open character of the facility." *Id.* at 46, 103 S.Ct. at 955.

*Cornelius v. NAACP Legal Defense & Educational Fund,* 473 U.S. 788, 802, 105 S.Ct. 3439, 87 L.Ed.2d 567 (1985). A content-based regulation, such as the District's, which restricts expression in either a traditional forum or a designated forum will be upheld only if the state shows it "is necessary to serve a compelling state interest and that it is narrowly drawn to achieve that end." *Perry Educ. Ass'n,* 460 U.S. at 45, 103 S.Ct. 948 (citing *Carey v. Brown,* 447 U.S. 455, 461, 100 S.Ct. 2286, 65 L.Ed.2d 263 (1980)). By contrast, a restriction on speech in a nonpublic forum is permissible so long as it is viewpoint neutral and "reasonable in light of the purpose which the forum at issue serves." *Id.* at 46–49, 103 S.Ct. 948.[3]

■ The forum here, the interior of a polling place, is neither a traditional public forum nor a government-designated one. It is not available for general public discourse of any sort. The only expressive activity involved is each voter's communication of his own elective choice and this has long been carried out privately—by secret ballot in a restricted space. *See Burson v. Freeman,* 504 U.S. 191, 201–06, 112 S.Ct. 1846, 119 L.Ed.2d 5 (1992) (describing early problems with voter fraud and intimidation in the United States and the states' responses, including secret ballot and restricted zones around polls). In the District of Columbia specifically, the record demonstrates that at least as early as 1960 the Board's regulations prohibited all "partisan political activity," either written or oral, "in any building while it is in use as a polling place." JA 28. District regulations also restrict election day activity at polling places to "the conduct of the

election" and limit polling place access to Board representatives, police officers, duly qualified election watchers, persons engaged in voting and others authorized by the Board. 3 D.C.M.R. § 708.3. Given these longstanding limitations on polling place speech, we do not see how the polls can fairly be described either as "places which 'by long tradition or by government fiat have been devoted to assembly and debate,'" or as places designated by the government "for use by the public at large for assembly and speech, for use by certain speakers, or for the discussion of certain subjects." *Cornelius,* 473 U.S. at 802, 105 S.Ct. 3439. As the Supreme Court declared in *Cornelius:* "We will not find that a public forum has been created in the face of clear evidence of a contrary intent, nor will we infer that the government intended to create a public forum when the nature of the property is inconsistent with expressive activity." 473 U.S. at 803, 105 S.Ct. 3439.

■ Having concluded that polling places are non-public fora, we further conclude that the Board's enforcement of the challenged election regulations constitutes reasonable viewpoint-neutral regulation of expression within polling places. In *Burson v. Freeman,* 504 U.S. 191, 112 S.Ct. 1846, 119 L.Ed.2d 5 (1992), the petitioner challenged similar but more extensive polling place restrictions in force in Tennessee. The challenged statutes prohibited "the display of campaign posters, signs or other campaign materials, distribution of campaign materials, and solicitation of votes for or against any person or political party or position" within the polling building or 100 feet from its entrance. The *Burson* majority concluded the regulation satisfied at least the reasonableness test applied to regulation of speech in non-public fora.[4] The same result is compelled

---

**3.** Although Marlin argues that public forum analysis does not apply to polling places because they are not "proprietary" to the government, *see* Brief of Appellant at 9–12, Supreme Court precedent establishes that the public forum analysis is appropriate. *See, e.g., Burson v. Freeman,* 504 U.S. 191, 112

S.Ct. 1846, 119 L.Ed.2d 5 (1992) (applying public forum analysis to Tennessee statute prohibiting display of campaign materials in or near polling places).

**4.** The plurality in *Burson* applied the more exacting public forum test because it conclud-

here.[5]

■ Marlin does not dispute that the regulations, which apply to all political activity, are viewpoint neutral. Nor does he question the validity of the interests identified by the Board, namely protecting "the orderly conduct of elections" by "creating a neutral zone within the polling place, preventing altercations over hot-button issues, intimidation of voters, *eleventh hour* smear campaigns and the like," Brief of Appellee at 20–21 (emphasis original)— which interests parallel those endorsed in *Burson,* namely protecting "the right of [Tennessee's] citizens to vote freely for the candidates of their choice" and safeguarding "the right to vote in an election conducted with integrity and reliability," 504 U.S. at 198–99, 112 S.Ct. 1846. Marlin contends only that the broad ban is unnecessary to prevent the evils the Board has identified. To pass constitutional muster, however, regulation of speech in a nonpublic forum need "not be the most reasonable or the only reasonable limitation" and, "[i]n contrast to a public forum, a finding of strict incompatibility between the nature of the speech or the identity of the speaker and the functioning of the nonpublic forum is not mandated." 473 U.S. at 808, 105 S.Ct. 3439 (citing *Perry Educ. Assn., supra*; *Lehman v. City of Shaker Heights,* 418 U.S. 298, 94 S.Ct. 2714, 41 L.Ed.2d 770 (1974)). The "decision to restrict access to a nonpublic forum need only be reasonable," *id.,* and the district's decision to ban campaign paraphernalia from polling places is a reasonable means of ensuring an orderly and peaceful voting environment, free from the threat of contention or intimidation. That narrower

regulations might be as effective or more so, as Marlin contends, does not invalidate the means the District has chosen. Regulation of a non-public forum, unlike that of a public forum, need not be "narrowly drawn to achieve [its] end." *Perry Educ. Ass'n,* 460 U.S. at 45, 103 S.Ct. 948 (citing *Carey v. Brown,* 447 U.S. 455, 461, 100 S.Ct. 2286, 65 L.Ed.2d 263 (1980)). Because the Board's enforcement of 3 D.C.M.R. §§ 708.4 and 708.8 to regulate political activity inside polling places is "reasonable in light of the purpose which the forum at issue serves," *Perry Educ. Assn.,* 460 U.S. at 49, 103 S.Ct. 948, given the history and function of polling places, *see Burson,* 504 U.S. at 200–09, 112 S.Ct. 1846, we hold that the regulations do not violate the First Amendment.

For the foregoing reasons, the judgment of the district court is

*Affirmed.*

---

ed the area *outside* the polling place was a public forum, noting the Court had characterized as a "quintessential public forum" "those places 'which by long tradition or by government fiat have been devoted to assembly and debate,' such as parks, streets, and sidewalks." 504 U.S. at 196–98, 112 S.Ct. 1846 (quoting *Perry Educ. Assn.,* 460 U.S. at 45, 103 S.Ct. 948). Concurring in the judgment, Justice Scalia expressed his view that the area outside the polling place was a non-public forum subject only to the reasonableness test.

We are not concerned with the area outside the polling place because the Board applies the ban only within the site. *See supra* note 1.

5. Marlin attempts to distinguish this case from *Burson* on the ground the challenge there was facial while his is as applied. That a challenge is as applied, however, does not alter the level of scrutiny applied in a nonpublic forum—to wit reasonableness. *See, e.g., United States v. Kokinda,* 497 U.S. 720, 110 S.Ct. 3115, 111 L.Ed.2d 571 (1990).