# United States Court of Appeals

## For the Eighth Circuit

_____

No. 11-2125

_____

Minnesota Majority; Minnesota Voters Alliance; Minnesota Northstar Tea Party
Patriots; Election Integrity Watch; Susan Jeffers, individually and as an election
judge; Dorothy Fleming; Jeff Davis; Dan McGrath; Andy Cilek

*Plaintiffs - Appellants*

v.

Joe Mansky, in his official capacity as the Elections Manager for Ramsey County;
Rachel M. Smith, in her official capacity as the Elections Manager for Hennepin
County; Mike Freeman, in his official capacity as Hennepin County Attorney;
John J. Choi, in his official capacity as Ramsey County Attorney; Mark Ritchie, in
his official capacity as Secretary of State; Susan Gaertner, in her individual capacity

*Defendants - Appellees*

_____

Appeal from United States District Court
for the District of Minnesota - Minneapolis

_____

Submitted: February 14, 2012
Filed: March 6, 2013

_____

Before GRUENDER, BENTON, and SHEPHERD, Circuit Judges.

_____

BENTON, Circuit Judge.

Several groups interested in electoral and governmental reform sued the Secretary of State, and Ramsey and Hennepin county election officials ("Minnesota"). Minnesota moved for dismissal, which the district court granted. The groups appeal as to the claims under the First Amendment and the Equal Protection clause.[1] Jurisdiction being proper under 28 U.S.C. § 1291, this court affirms in part, reverses in part, and remands.

I.

Election Integrity Watch ("EIW") is comprised of Minnesota Majority, Minnesota Voters Alliance, and the North Star Tea Party Patriots. These groups assert as their mission the improvement of government and governmental processes. Minnesota Majority and Minnesota Voters Alliance advocate electoral reforms. None is a political party, and none endorsed a candidate or ballot issue in the November 2010 election. Before the election, EIW produced "Please I.D. Me" buttons. North Star Tea Party Patriots produced hats and t-shirts with Tea Party logos. The t-shirts also featured either a drawing of a shield or one of several slogans, including: "Don't tread on me," "Liberty," "We'll Remember in November," and "Fiscal Responsibility, Limited Government, Free Markets."

Shortly before the November 2010 election, EIW sought to enjoin the enforcement of the third sentence of Minn. Stat. § 211B.11, subd. 1: "A political badge, political button, or other political insignia may not be worn at or about the polling place on primary or election day." Violation of this sentence is a petty misdemeanor. **Minn. Stat. § 211B.11, subd. 4**. The first sentence of Minn. Stat. § 211B.11, subd. 1 generally prohibits displaying campaign material or trying to

---

[1]The groups assert the same claims under the Minnesota Constitution. These claims are evaluated using the same standard as those under the U.S. Constitution. ***Tatro v. Univ. of Minn.***, 816 N.W.2d 509, 516 (Minn. 2012).

persuade a voter about a candidate or ballot question within a polling place or within 100 feet of the polling place's building.

On the eve of the election, the district court denied a temporary restraining order. Minnesota then distributed an Election Day Policy explaining the statutory ban on political materials in polling places. The Policy gives examples of political materials, including: "[i]ssue oriented material designed to influence or impact voting (including specifically the 'Please I.D. Me' buttons)" and "[m]aterial promoting a group with recognizable political views (such as the Tea Party, MoveOn.org, and so on)." The Policy instructed election judges to ask persons wearing political material to cover or remove it. If they refused, the Policy instructed election judges to record their names and addresses for potential prosecution but to permit them to vote.

At least three EIW members were affected by the Policy. One was asked to cover or remove his t-shirt. Another who refused to cover or remove his button had his name and address recorded. Yet another who was wearing both a t-shirt and a button was delayed several hours before voting. EIW asserts that the fear of prosecution stopped others from displaying the apparel. Still others who were wearing materials from EIW and other similar organizations voted without incident.

After the election, EIW amended its complaint to challenge the constitutionality of Minn. Stat. § 211B.11, subd. 1 and the Policy issued under it. The district court granted Minnesota's motion to dismiss.

This court reviews de novo the grant of a motion to dismiss for failure to state a claim. *Butler v. Bank of Am., N.A.*, 690 F.3d 959, 961 (8th Cir. 2012). Reviewing a dismissal under Rule 12(b)(6), this court assumes all facts in the complaint to be true and construes all reasonable inferences from those facts most favorably to the complainant. *Id.* Although a complaint need not contain "detailed factual

allegations," it must contain facts with enough specificity "to raise a right to relief above the speculative level." ***Bell Atl. Corp. v. Twombly***, 550 U.S. 544, 555 (2007). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." ***Ashcroft v. Iqbal***, 556 U.S. 662, 678 (2009), *citing* ***Twombly***, 550 U.S. at 555.

A court reviewing a motion to dismiss may also "consider some public records, materials that do not contradict the complaint, or materials that are 'necessarily embraced by the pleadings.'" ***Noble Sys. Corp. v. Alorica Cent., LLC***, 543 F.3d 978, 982 (8th Cir. 2008), *quoting* ***Porous Media Corp. v. Pall Corp.***, 186 F.3d 1077, 1079 (8th Cir. 1999). The complaint refers to the Policy. The parties rely on it in their briefs. No party disputes its contents or authenticity. No party challenged the district court's consideration of it, and this court will likewise consider it as "necessarily embraced by the pleadings."

II.

EIW alleges that Minn. Stat. § 211B.11, subd. 1 is facially unconstitutional. To succeed in a typical facial attack, EIW would have to establish "that no set of circumstances exists under which [§ 211B.11, subd. 1] would be valid," or that the statute lacks any "plainly legitimate sweep." ***United States v. Stevens***, 559 U.S. 460, ___, 130 S. Ct. 1577, 1587 (2010). A First Amendment case is "a second type of facial challenge": a law may be invalidated as overbroad if "a substantial number of its applications are unconstitutional, judged in relation to the statute's plainly legitimate sweep." ***Id.***, *quoting* ***Wash. State Grange v. Wash. State Republican Party***, 552 U.S. 442, 449 n.6 (2008). "To be facially invalidated under this doctrine, the overbreadth of an ordinance affecting both conduct and pure speech must be both 'real' and 'substantial' in relation to its 'plainly legitimate sweep.'" ***Excalibur Grp., Inc. v. City of Minneapolis***, 116 F.3d 1216, 1224 (8th Cir. 1997), *quoting* ***New York v. Ferber***, 458 U.S. 747, 769-70 (1982).

The First Amendment prohibits laws "abridging the freedom of speech." **U.S. Const. amend. I**. "Nothing in the Constitution requires the Government freely to grant access to all who wish to exercise their right to free speech on every type of Government property without regard to the nature of the property or to the disruption that might be caused by the speaker's activities." *Cornelius v. NAACP Legal Def. & Educ. Fund, Inc.*, 473 U.S. 788, 799-800 (1985). The Supreme Court has "adopted a forum analysis as a means of determining when the Government's interest in limiting the use of its property to its intended purpose outweighs the interest of those wishing to use the property for other purposes." *Id.* at 800.

In *Burson v. Freeman*, 504 U.S. 191 (1992), a Tennessee statute prohibited "campaign posters, signs or other campaign materials, distribution of campaign materials, and solicitation of votes for or against any person or political party or position on a question" within 100 feet of the entrance to a polling place and the building in which it was located. *Burson*, 504 U.S. at 193-94. The plurality noted that the "campaign-free" zones included sidewalks and streets adjacent to the polling places, thus banning speech in public forums. *Id.* at 196 & n.2. Because it banned content-based speech in public forums, the Tennessee statute was subject to strict scrutiny, which requires that the state show that the restriction is necessary and narrowly tailored to achieve a compelling state interest. *Id.* at 198-99. The Supreme Court ruled that this was the rare case where a law survived strict scrutiny because of the long history, substantial consensus, and "simple common sense" showing that restrictions around polling places are necessary to protect the states' compelling interests in preventing voter intimidation and election fraud. *Id.* at 206, 211.

EIW's challenge includes the first sentence of Minn. Stat. § 211B.11, subd.1 (prohibiting solicitation inside or within 100 feet of the polling place). To that extent, the *Burson* case defeats a facial attack on the first sentence of Minn. Stat. § 211.B11, subd. 1.

The third sentence of the Minnesota statute applies only within ("at or about") the polling place. **Minn. Stat. § 211B.11, subd.1** ("A political badge, political button, or other political insignia may not be worn at or about the polling place on primary or election day."). A polling place is a nonpublic forum. *See, e.g.*, *PG Publ'g Co. v. Aichele*, 705 F.3d 91, ___ n.10, 2013 WL 150138, at *5 n.10 (3d Cir. Jan. 15, 2013); *Marlin v. D.C. Bd. of Elections & Ethics*, 236 F.3d 716, 719 (D.C. Cir. 2001); *see also* *Poniktera v. Seiler*, 104 Cal. Rptr. 3d 291, 302 (Cal. Ct. App. 2010) ("The comments of both Justice Scalia's concurring opinion in *Burson*, as well as the dissent, confirm our reading that *Burson* understood it was *not* approving the application of strict scrutiny to restrictions on conduct *within* the confines of the polling station . . . .").

EIW believes that by Eighth Circuit precedent, a polling place is a public forum. This court has stated in passing that "the area containing the voting booths" was "a designated public forum" on the date it was being used for voting. *Embry v. Lewis*, 215 F.3d 884, 888 (8th Cir. 2000). The *Embry* court was not performing a forum analysis of the polling area for free speech purposes, as shown by its lack of analysis or citation of precedent on this point. The *Embry* court did not cite *Burson*. The use of *Embry*'s passing comment to assert that a polling place is a public forum has rightly been rejected in another circuit. *See* *United Food & Commercial Workers Local 1099 v. City of Sidney*, 364 F.3d 738, 749 (6th Cir. 2004). The polling place itself is a nonpublic forum.

A restriction on speech in a nonpublic forum is not subject to strict scrutiny and is permissible if it is viewpoint neutral and "reasonable in light of the purpose which the forum at issue serves." *Perry Educ. Ass'n v. Perry Local Educators' Ass'n*, 460 U.S. 37, 46-49 (1983). The third sentence of the Minnesota statute is viewpoint neutral because it applies to all political material, regardless of viewpoint. It does not define "political" to include or exclude any view.

Restrictions on speech in a nonpublic forum, to be valid, must also be "reasonable in light of the purpose which the forum at issue serves." *Id.* at 49. The state has a legitimate interest in "maintain[ing] peace, order and decorum" in the polling place. *Mills v. Alabama*, 384 U.S. 214, 218 (1966). A state also has a compelling interest in "protecting voters from confusion and undue influence" and "preserving the integrity of its election process." *Burson*, 504 U.S. at 199 (citations and internal quotation marks omitted). The statute prohibits the wearing of a "political badge, political button, or other political insignia" in the polling place.[2] The Supreme Court has held that a statute restricting speech "related to a political campaign" in the *public* forum *outside* the polling place survives strict scrutiny. *Id.* at 196-97, 211. Because a statute restricting speech related to a political campaign outside the polling place survives strict scrutiny, the Minnesota statute, to the extent it restricts speech about a political campaign inside the polling place, is "reasonable in light of the purpose which the forum at issue serves." *Perry Educ. Ass'n*, 460 U.S. at 49. The "decision to restrict access to a nonpublic forum need only be *reasonable*; it need not be the most reasonable or the only reasonable limitation." *Cornelius*, 473 U.S. at 808; *see also* *Marlin*, 236 F.3d at 720 ("That narrower regulations might be as effective or more so . . . does not invalidate the means . . . chosen.") The statute here has a "plainly legitimate sweep" when it prohibits speech about a political campaign.[3]

---

[2]EIW notes that the statute does not define "political." EIW, however, does not include the word "vague" or "vagueness" in its argument to this court. EIW has waived its vagueness challenge by failing to brief it to this court. *United States v. Frook*, 616 F.3d 773, 777 n.2 (8th Cir. 2010).

[3]The dissent suggests that Minnesota's action is unconstitutional absent examples of actual disruption. That showing is not required. *See, e.g.*, *Burson*, 504 U.S. at 206-07; *Perry Educ. Ass'n*, 460 U.S. at 52 & n.12; *Citizens for Police Accountability Political Comm. v. Browning*, 572 F.3d 1213, 1220 & n.15 (11th Cir. 2009) (per curiam) ("The *Burson* plurality opinion teaches us that the State need not wait for actual interference or violence or intimidation to erupt near a polling place

EIW's complaint states that Minnesota has applied the statute to material that does not attempt to persuade or influence voters to vote for or against any particular political party, candidate, or question on the ballot. Other courts have applied *Burson* to uphold bans on material unrelated to any issue on the ballot. ***Citizens for Police Accountability Political Comm. v. Browning***, 572 F.3d 1213, 1218-19 (11th Cir. 2009) (per curiam) (relying on *Burson* to find constitutional a statute that prohibited solicitation that targeted voters exiting polling places and that concerned matters unrelated to any issue on the ballot); ***Schirmer v. Edwards***, 2 F.3d 117, 122-23 (5th Cir. 1993) (finding constitutional a "total ban on politicking," including "buttons and T-shirts," within a 600-foot radius of the polling place).[4] Even if Minnesota acted unreasonably in applying its statute to some material, the complaint does not allege that there were a "substantial number" of such unreasonable applications in relation to the statute's reasonable applications. *See **Wash. State Grange***, 552 U.S. at 449 n.6. "[W]hatever overbreadth may exist should be cured through case-by-case analysis of the fact situations to which its sanctions, assertedly, may not be applied." ***Broadrick v. Oklahoma***, 413 U.S. 601, 615-16 (1973).

---

for the State to act.").

[4]Contrary to the dissent's assertion, it is of no consequence that *Browning* and *Schirmer* address laws regulating exit polling (after citizens already voted). "[C]ommotion tied to exit solicitation is as capable of intimidating and confusing the electorate and impeding the voting process – even deterring potential voters from coming to the polls – as other kinds of political canvassing or political action around the polls." ***Browning***, 572 F.3d at 1219. Moreover, both statutes passed strict scrutiny (more exacting than here) asserting state interests *identical* to those in *Burson*: protecting the voters from confusion and undue influence, and preserving the integrity and reliability of elections. ***Id.***; ***Schirmer***, 2 F.3d at 120.

EIW has failed to state a facial claim under the First Amendment against Minn. Stat. § 211B.11, subd. 1.[5]

III.

EIW claims that the statute and the Election Day Policy are unconstitutional as applied. "An as-applied challenge consists of a challenge to the statute's application only as-applied to the party before the court." *Republican Party of Minn., Third Cong. Dist. v. Klobuchar*, 381 F.3d 785, 790 (8th Cir. 2004). "If an as-applied challenge is successful, the statute may not be applied to the challenger, but is otherwise enforceable." *Id.*; *see* *Citizens United v. Fed. Election Comm'n*, 558 U.S. 310, 130 S. Ct. 876, 893 (2010) (holding that the distinction between a facial challenge and an as-applied challenge "goes to the breadth of the remedy employed by the Court, not what must be pleaded in a complaint").

A.

Under the First Amendment, the statute and Policy are constitutional as applied to EIW if their application to EIW is viewpoint neutral and "reasonable in light of the purpose which the forum at issue serves." *Perry Educ. Ass'n*, 460 U.S. at 49. As discussed, the statute is viewpoint neutral. The Policy is also viewpoint neutral. It recites as examples of "political": "the name of political party in Minnesota, such as the Republican, DFL, Independence, Green or Libertarian parties"; items "in support of or opposition to" any ballot question; "[i]ssue oriented material designed to influence or impact voting (including specifically the 'Please I.D. Me' buttons"; and "[m]aterial promoting a group with recognizable political views (such as the Tea Party, MoveOn.org, and so on)." The examples in the Policy do not exclude any

---

[5]EIW's new argument that some state officials are Democrats (and its organization's members are not) is not enough to state a plausible claim for First Amendment retaliation.

party, material, or group from the Policy's application and do not favor or disfavor any view.

As to the reasonableness of the statute's and Policy's application to EIW, the district court considered "matters outside the pleadings." *See* **Fed. R. Civ. P. 12(d)**. For example, the district court found that "[t]he language on the ["Please I.D. Me"] button intimates that government-issued identification should be – or is – required in order to vote in Minnesota. This intimation could confuse voters and election officials and cause voters to refrain from voting because of increased delays or the misapprehension that identification is required." The complaint does not include these facts; the district court "must have been referencing argument and evidence from some source outside the four corners of the complaint." *McAuley v. Fed. Ins. Co.*, 500 F.3d 784, 787 (8th Cir. 2007). Because the district court considered "matters outside the pleadings," it should have evaluated the motion under Rule 56. **Fed. R. Civ. P. 12(d)**; *McAuley*, 500 F.3d at 788. This court reverses and remands the as-applied First Amendment claim to the district court so that it may "(1) properly analyze the motion as a request for summary judgment through application of the standards articulated in Rule 56 and (2) give the parties sufficient opportunity to create an acceptable record . . . ." *McAuley*, 500 F.3d at 788.

B.

EIW argues that the Minnesota statute and Policy denied it equal protection in violation of the Fourteenth Amendment. "The Equal Protection Clause generally requires the government to treat similarly situated people alike." *Klinger v. Dep't of Corr.*, 31 F.3d 727, 731 (8th Cir. 1994), *citing City of Cleburne v. Cleburne Living Ctr., Inc.*, 473 U.S. 432, 439 (1985). To survive dismissal, EIW must allege that Minnesota treated it differently than similarly situated people. *Ganley v. Minneapolis Park & Recreation Bd.*, 491 F.3d 743, 747 (8th Cir. 2007).

-10-

EIW argues that election judges selectively enforced the statute and the Policy. Even if the complaint adequately described how the statute and Policy were enforced differently among similarly situated people (including among people who wore the "Please I.D. Me" buttons), the complaint must also allege that Minnesota caused the selective enforcement. *Madewell v. Roberts*, 909 F.2d 1203, 1208 (8th Cir. 1990) ("Liability under § 1983 requires a causal link to, and direct responsibility for, the deprivation of rights."). While causation is generally a question of fact, this court may decide the question as a matter of law where "the question is so free from doubt as to justify taking it from the [fact finder]." *Parrish v. Ball*, 594 F.3d 993, 1000 (8th Cir. 2010) (alteration in original), *quoting Ricketts v. City of Columbia*, 36 F.3d 775, 779-80 (8th Cir. 1994).

Because the statute and Policy do not "affirmatively sanction" selective enforcement, this court analyzes the claim against the municipalities and the official-capacity defendants under the "deliberate indifference" standard of *City of Canton v. Harris*, 489 U.S. 378, 388 (1989). *Szabla v. City of Brooklyn Park, Minn.*, 486 F.3d 385, 390 (8th Cir. 2007) (en banc) ("Where a policy is constitutional on its face, but it is asserted that a municipality should have done more to prevent constitutional violations by its employees, a plaintiff must establish the existence of a 'policy' by demonstrating that the inadequacies were a product of deliberate or conscious choice by policymakers. The standard of fault in that situation is 'deliberate indifference' to constitutional rights." (internal citation omitted)). The complaint alleges only that the Policy's "standardless discretion" resulted in selective enforcement. The Policy's delegation of discretion to election judges did not, without more, cause selective enforcement. *See Dick v. Watonwan Cnty.*, 738 F.2d 939, 942-43 (8th Cir. 1984) (holding that a municipality's policy giving discretion to subordinates did not subject the municipality to liability for the subordinates' errors of judgment).

This court has not reviewed a suit against an individual-capacity defendant who wrote a policy so standardless that it caused selective enforcement. The closest

analogy is suing an individual-capacity defendant for failure to train subordinates, causing selective enforcement. A supervisor may be individually liable for failure to train subordinates if it amounts to deliberate indifference to the rights of persons whom the subordinates harm. *Parrish*, 594 F.3d at 1002; *Andrews v. Fowler*, 98 F.3d 1069, 1078 (8th Cir. 1996) (applying the same standard from official-capacity failure to train to the individual-capacity allegation). The same "deliberate indifference" standard applies in this case. The election supervisors' Policy that delegated discretion to election judges did not, without more, cause selective enforcement. *See Dick*, 738 F.2d at 942 ("The Board might have chosen to adopt more detailed guidelines, and such rules might have averted the mistake that was made in this case, but the Board's decision to rely on its employees' judgment is certainly not unconstitutional in and of itself . . . .").

EIW has failed to allege that Minnesota caused selective enforcement of the facially neutral statute and Policy, and has therefore failed to state an equal protection claim.

\* \* \* \* \* \* \*

The judgment of the district court is affirmed in part, reversed in part, and the case remanded for proceedings consistent with this opinion.

SHEPHERD, Circuit Judge, concurring in part and dissenting in part.

I am pleased to concur with the majority's decision holding (1) that the district court improperly considered matters outside the pleadings when dismissing the plaintiffs' as-applied challenge and (2) that the plaintiffs have failed to state an equal protection claim. Because I respectfully disagree with the majority's conclusion that the statutory restrictions, which ban the wearing of any political insignia, are reasonable in light of the need to maintain "peace, order, and decorum," to "protect[]

-12-

voters from confusion and undue influence," and to"preserv[e] the integrity of its election process" in the polling place, I dissent from the affirmance of the district court's dismissal of the plaintiffs' claim that the statute is facially unconstitutional.

As the majority points out, for the speech restrictions in the polling place to survive constitutional scrutiny, the restrictions must be "viewpoint neutral and 'reasonable in light of the purpose which the forum at issue serves.'" See supra at 6 (quoting Perry Educ. Ass'n v. Perry Local Educators' Ass'n, 460 U.S. 37, 49 (1983)). "The state has a legitimate interest in 'maintain[ing] peace, order and decorum' in the polling place[,]" supra at 7 (quoting Mills v. Alabama, 384 U.S. 214, 218 (1966)), "in 'protecting voters from confusion and undue influence' and 'preserving the integrity of its election process.'" Supra at 7 (quoting Burson v. Freeman, 504 U.S. 191, 199 (1992)). I have no reservations about the majority's conclusion that the statute is viewpoint neutral or that under Burson, it is constitutional to restrict speech inside the polling place about either political campaigns or issues that are on the ballot.[6]

I do not, however, agree that Burson may be applied to this statute to uphold the restrictions on the wearing of any political insignia in the polling place. The Tennessee statute at issue in Burson stated:

> Within the appropriate boundary as established in subsection (a) [100 feet from the entrances], and the building in which the polling place is located, the display of *campaign* posters, signs or other *campaign* materials, distribution of *campaign* materials, and solicitation of votes for or against any person or political party or position on a question are prohibited.

---

[6]I also agree with the majority that EIW has waived any vagueness challenge by failing to brief it to this court. The district court likewise determined "that the Amended Complaint does not allege that Minnesota Statues section 211B.11 is void for vagueness." (Order at 14-15.) It would appear, then, that plaintiffs are not barred from raising such a challenge in the future.

Id. at 193-94 (emphasis added) (brackets in original) (quoting Tenn. Code Ann. § 2-7-111(b) (Supp. 1991)).  The Supreme Court noted that "[w]hether individuals may exercise their free speech rights near polling places [under the Tennessee statute] depends entirely on whether their speech is related to a political *campaign*."  Id. at 197 (emphasis added).  In his dissent, Justice Stevens points out that the Tennessee statute "silences all campaign-related expression, *but allows expression on any other subject*: religious, artistic, commercial speech, *even political debate and solicitation concerning issues or candidates not on the day's ballot.*"  Id. at 223 (Stevens, J., dissenting) (emphasis added).

The majority cites Citizens for Police Accountability Political Comm. v. Browning, 572 F.3d 1213 (11th Cir. 2009) (per curiam) and Schirmer v. Edwards, 2 F.3d 117 (5th Cir. 1993) as cases that applied Burson to uphold bans on material unrelated to any issue on the ballot.  Supra at 8.  In both of those cases, however, the focus of the restrictions was the prevention of harassment of voters by exit solicitors seeking voter signatures on petitions as voters left the polls.  See Browning, 572 F.3d at 1218-19; Schirmer, 2 F.3d at 122-23.  I fail to see how this broad restriction, which prohibits a voter from wearing any political emblem, insignia, or slogan that is unrelated to an issue or candidate on the ballot, would rationally and reasonably help maintain the "peace, order, and decorum" of the polling place, "protect[] voters from confusion or undue influence," or "preserv[e] the integrity of [Minnesota's] election process."[7]  Further, the record in this case is devoid of facts which demonstrate that

_____

[7]For example, how does the wearing of a button or shirt bearing an American flag or the Star of David, which could arguably be considered political under this statute, disrupt the "peace, order, and decorum" of the voting booth?  I do not accept that the presence of a passive and peaceful voter who happens to wear a shirt displaying, for example, the words "American Legion," "Veterans of Foreign Wars," "AFL-CIO," "NRA," "NAACP," or the logo of one of these organizations (all of which have actively participated in the political process) somehow causes a disruption in the polling place or protects voters from confusion and undue influence.

-14-

any disruption of the "peace, order, and decorum" of the Minnesota election process has occurred by virtue of voters wearing a political emblem, insignia, or slogan that is unrelated to an issue or candidate on the ballot. Although the existence of a disruption is not necessary before the state imposes reasonable limitations on speech, had such facts existed, then perhaps I could agree that the restrictions are reasonable. Without further development of the record to reflect how these restrictions are reasonable limits on free speech which rationally relate to the state's interest in maintaining order and preserving integrity at the polling place, I cannot join in the majority's rejection of plaintiffs' constitutional challenge on facial grounds.

Accordingly, I respectfully dissent from the majority's affirmance of the district court's dismissal of the plaintiffs' facial challenge as to the third sentence of Minnesota Statute § 211B.11, subd. 1. I would remand to allow the record to be developed regarding plaintiffs' facial challenge. Otherwise, I concur with the majority's opinion.

_____