UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 12-1832**

SONS OF CONFEDERATE VETERANS, VIRGINIA DIVISION,

Plaintiff – Appellant,

v.

CITY OF LEXINGTON, VIRGINIA; MARILYN E. ALEXANDER; DAVID
COX; MIMI ELROD; T. JON ELLESTAD; BOB LERA; GEORGE R.
PRYDE; CHARLES SMITH; MARY P. HARVEY-HALSETH,

Defendants – Appellees.

Appeal from the United States District Court for the Western
District of Virginia, at Roanoke.  Samuel G. Wilson, District
Judge.  (7:12-cv-00013-SGW-RSB)

Argued:  May 16, 2013                    Decided:  July 5, 2013

Before  KING, DIAZ, and FLOYD, Circuit Judges.

Affirmed by published opinion.  Judge King wrote the opinion, in
which Judge Diaz and Judge Floyd joined.

**ARGUED:**  Thomas Eugene Strelka, STRICKLAND, DIVINEY & STRELKA,
Roanoke, Virginia, for Appellant.  Jeremy E. Carroll, GLENN,
FELDMANN, DARBY & GOODLATTE, Roanoke, Virginia, for Appellees.
**ON BRIEF**: Douglas R. McKusick, THE RUTHERFORD INSTITUTE,
Charlottesville, Virginia, for Appellant.  Paul G. Beers, GLENN,
FELDMANN, DARBY & GOODLATTE, Roanoke, Virginia, for Appellees.

KING, Circuit Judge:

The Sons of Confederate Veterans, Virginia Division (the "SCV"), initiated this action against the City of Lexington, Virginia, plus several of its officials, alleging that Lexington City Code section 420-205(C) (the "Ordinance") contravenes the SCV's First Amendment rights and breaches a consent decree resolving an earlier lawsuit between the SCV and Lexington. Enacted in 2011, the Ordinance bans any private access to City-owned flag standards. The district court ruled that the Ordinance is constitutional and dismissed the Complaint for failure to state a claim. See Sons of Confederate Veterans, Va. Div. v. City of Lexington, Va., No. 7:12-cv-00013 (W.D. Va. June 14, 2012) (the "Opinion").[1] The SCV has appealed, and, as explained below, we agree with the district court and affirm.

I.

A.

1.

In early 2010, the SCV began planning a parade in honor of the upcoming Lee-Jackson Day, a holiday held in mid-January in

---

[1] The Opinion is published at 894 F. Supp. 2d 768 and also found at J.A. 34-43. (Citations herein to J.A. __ refer to the contents of the Joint Appendix filed by the parties in this appeal.)

the Commonwealth of Virginia to celebrate the births of Robert E. Lee and Thomas J. "Stonewall" Jackson.[2] Two months beforehand, the SCV requested permission from the Lexington City Council to use flag standards affixed to certain light poles along the street to display the Confederate flag during the parade. The City Council had theretofore permitted the flag standards to be used by private organizations, including Washington and Lee University, the Virginia Military Institute, and several college fraternities.

At its December 2, 2010 meeting, the City Council granted the SCV's request by a five-to-one vote. Soon thereafter, at a subsequent meeting, the dissenting Councilman moved the adoption of a "flag/banner" policy, suggesting that the City Attorney and City Manager be charged with the policy's development. The motion passed unanimously, and at a March 2011 meeting — after the SCV had displayed its Confederate flag at the January 2011 parade — the Council received public comments, most opposing the display of the Confederate flag within the City.

---

[2] Because the district court resolved this dispute pursuant to Federal Rule of Civil Procedure 12(b)(6), we accept the facts alleged in the Complaint as true and view them "in the light most favorable to the plaintiff." Spaulding v. Wells Fargo Bank, N.A., 714 F.3d 769, 776 (4th Cir. 2013). The Complaint is found at J.A. 5-13.

Six months later, in September 2011, Lexington adopted the Ordinance, restricting any future use of the City-owned flag standards to three flags only. The Ordinance, codified in the "Signs" article of the "Zoning" chapter of the Lexington City Code, provides:

> (1) Only the following flags may be flown on the flag standards affixed to light poles in the City and no others:
>
>> (a) The national flag of the United States of America (the "American flag").
>>
>> (b) The flag of the Commonwealth of Virginia, Code of Virginia, Title 1, Chapter 5.
>>
>> (c) The City flag of Lexington.
>
> (2) The American flag, the flag of the Commonwealth of Virginia and the City flag of Lexington may be flown by the City on the light poles that have flag standards affixed to them on dates adopted by City Council. . . . Currently the holidays or designated days are as follows: Independence Day, Labor Day, Veterans Day, Flag Day, Martin Luther King Day, Memorial Day, Lee-Jackson Day, Presidents Day, and on the day of the annual Rockbridge Community Festival. On such dates or days the flag(s) may be flown for more than one day. No other flags shall be permitted. Nothing set forth herein is intended in any way to prohibit or curtail individuals from carrying flags in public and/or displaying them on private property.

Lexington City Code § 420-205(C) (2011).

2.

Similar to this action, the SCV had sued the City in 1993, alleging constitutional violations involving the display of the Confederate flag. See Sons of Confederate Veterans, Va. Div. v.

4

City of Lexington, No. 7:93-cv-00492 (W.D. Va. 1993). That lawsuit arose out of the 1991 rededication of a Stonewall Jackson statue in Lexington. Members of the SCV sought to display the Confederate flag as they marched in a parade celebrating the occasion, but, as alleged, the City prohibited the display. That suit was settled by a "Consent Decree," under which the City and its agents were permanently enjoined from denying or abridging the rights of the SCV and its members

> to wear, carry, display or show, at any government-sponsored or government-controlled place or event which is to any extent given over to private expressive activity, the Confederate flag or other banners, emblems, icons or visual depictions to bring into public notice any logo of "stars and bars" that ever was used as a national or battle flag of the Confederacy.

Consent Decree 2.[3]

B.

On January 12, 2012, the SCV filed its two-count Complaint against Lexington, six of its City Council members, the Mayor, and the City Manager (collectively, the "City"). The first claim, entitled "Civil Contempt," alleges that the Ordinance impermissibly conflicts with the Consent Decree. The second claim, designated simply as "42 U.S.C. § 1983," asserts that

---

[3] The district judge presiding over this case also presided over the 1993 proceedings and entered the Consent Decree, which is found at J.A. 14-18.

5

enactment of the Ordinance was the City's response to the SCV's request to engage in protected expression within the "flag standard forum" and, thus, constitutes viewpoint and content discrimination that is violative of the Free Speech Clause. The Complaint seeks declaratory relief, an adjudication of civil contempt, fees, costs and sanctions, plus damages.

On March 21, 2012, the City moved to dismiss the Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. The motion made several points, including that the flag standards are not a public forum and the Ordinance survives constitutional scrutiny because it is reasonable and viewpoint neutral. The City also maintained that the Ordinance is consistent with the Consent Decree, which only enforced the SCV's existing First Amendment rights, without creating any special right for the SCV to display flags from government property.

Although the district court granted the motion to dismiss by its Opinion of June 14, 2012, the court rejected the City's assertion that the flag standards are non-public forums. The court explained that, although flag standards are not a traditional public forum, the SCV had alleged facts showing that Lexington had established them as such by allowing private entities to use them. Viewing the allegations of the Complaint in the light most favorable to the SCV, the court proceeded

6

"under the assumption that the City created a designated public forum when it allowed private entities to fly their flags from city-owned flag poles."  Opinion 8.  The court therefore assessed whether Lexington was entitled to close the designated public forum, recognizing that

> [m]otive is a central issue in certain constitutional inquiries when government action has a discriminatory effect.  And, "[t]o be sure, if a government regulation is based on the content of the speech or the message, that action must be scrutinized more carefully to ensure that communication has not been prohibited merely because public officials disapprove the speaker's view."

Id. at 6-7 (footnote omitted) (quoting U.S. Postal Serv. v. Council of Greenburgh Civic Ass'ns, 453 U.S. 114, 132 (1981)). The court determined that, because the Ordinance "makes no distinction as to viewpoint or subject matter and advances no particular position," it is content neutral.  Id. at 8.  As a result, the alleged discriminatory motivation of the City in closing the forum does not taint the otherwise facially valid ordinance.  Id. at 8-9.

Next, the district court ruled that the Ordinance is reasonable, emphasizing that "[t]he Constitution does not compel a municipality to provide its citizens a bully pulpit, but rather requires it to refrain from using its own position of authority to infringe speech."  Opinion 9.  The court recognized that there were compelling and practical reasons for Lexington

7

to close its flag standards to the public, such as the possibility of the City being forced to hoist messages with which it would rather not associate, and the potential for private expression to subsume the intended official purpose of the flag standards. The Opinion stressed that the Ordinance "leaves ample opportunity for [the] SCV and every other group to display the flags of their choice." Id. Finally, the court concluded that, because "the City has not abridged [the] SCV's constitutional rights, . . . the City has not violated the 1993 consent decree." Id. at 10.

The SCV filed a timely notice of appeal, asking us to reverse the judgment of the district court. We possess jurisdiction pursuant to 28 U.S.C. § 1291.


II.

We review de novo the dismissal of a complaint for failure to state a claim. See Brown v. N.C. Dep't of Corr., 612 F.3d 720, 722 (4th Cir. 2010). As the Supreme Court has explained, "Rule 12(b)(6) authorizes a court to dismiss a claim on the basis of a dispositive issue of law." Neitzke v. Williams, 490 U.S. 319, 326 (1989).

8

The SCV contends that the district court erred in determining that, because the Ordinance is facially neutral, the City's motivation for closing the designated public forum was immaterial. Maintaining that the City's restriction of the flag standards was viewpoint-based, the SCV argues that "[c]ontrary to the District Court's ruling, a governmental entity's decision to close a forum for expression . . . is not unconstrained by constitutional principles, and the closing may not be accomplished in order to censor a viewpoint that has been expressed in the forum." Br. of Appellant 16.[4] The SCV further contends that, even if the Ordinance does not violate the Free Speech Clause, it conflicts with the Consent Decree because, "by making it a violation of local law to display or show a Confederate flag on a flag standard on one or more of the light poles within the City of Lexington, the Defendants have denied and/or abridged the rights of the [SCV] as provided by the [Consent Decree]." Id. at 23.

---

[4] The SCV explains that the constitutional right being abridged is that protecting freedom of expression, specifically guaranteed by the Free Speech Clause of the First Amendment. Pursuant thereto, "Congress shall make no law . . . abridging the freedom of speech." U.S. Const. amend. I. The Free Speech Clause applies to the various states through the Fourteenth Amendment. See Snyder v. Phelps, 580 F.3d 206, 214 n.4 (4th Cir. 2009).

In response, the City revives its contention that the City-owned flag standards are nonpublic forums and the Ordinance satisfies the relevant requirement that it be reasonable and viewpoint neutral. Nonetheless, the City also contends that, even if the flag standards are designated public forums, the Ordinance is constitutional "[b]ecause the Flag Ordinance is reasonable and facially neutral and there is no allegation that it has any discriminatory effect." Br. of Appellees 36. Additionally, the City maintains that the Ordinance is consistent with the purpose and plain language of the Consent Decree.[5]

A.

1.

In assessing a First Amendment claim relating to private speech on government property, we must first identify the nature of the forum at issue — here, the City's flag standards affixed to its light posts. See Capitol Square Review & Advisory Bd. v. Pinette, 515 U.S. 753, 761 (1995) (explaining that "[t]he right to use government property for one's private expression depends

_____

[5] In disposing of this appeal, we need not address the City's alternate contention, made in the district court and herein, that flags flown on the City-owned flag standards constitute government speech and are not subject to any First Amendment protection. See Johanns v. Livestock Marketing Ass'n, 544 U.S. 550, 553 (2005) ("[T]he Government's own speech . . . is exempt from First Amendment scrutiny.").

10

upon" the nature of the property); Int'l Soc'y for Krishna Consciousness, Inc. v. Lee, 505 U.S. 672, 678 (1992) (recognizing "forum based" approach to assessing speech restrictions that government places on its property).

As our Court has recognized, "[i]n deciding whether government property should be made available for protected expressive activity . . . , we apply different levels of protection for different types of government property." News & Observer Publ'g Co. v. Raleigh-Durham Airport Auth., 597 F.3d 570, 577 (4th Cir. 2010). First, public forums have been defined by the Supreme Court as "places which by long tradition or by government fiat have been devoted to assembly and debate," and they are subject to stringent First Amendment protection. Perry Educ. Ass'n v. Perry Local Educators' Ass'n, 460 U.S. 37, 45-46 (1983); see also Cornelius v. NAACP Legal Defense & Educ. Fund, Inc., 473 U.S. 788, 817 (1985) (recognizing parks, streets, and sidewalks as "quintessential public forums"). A governmental restriction on speech in a public forum is subject to strict scrutiny, which requires the proponent of the restriction to "show that its regulation is necessary to serve a compelling state interest and that it is narrowly drawn to achieve that end." Perry Educ. Ass'n, 460 U.S. at 45 (citing Carey v. Brown, 447 U.S. 455, 461 (1980)).

11

Government property may also be classified as a "nonpublic forum," that is, "[p]ublic property which is not by tradition or designation a forum for public communication." Perry Educ. Ass'n, 460 U.S. at 45-46. A nonpublic forum — such as an airport, see Int'l Soc'y for Krishna Consciousness, 505 U.S. at 679, or an election polling place, see Minn. Majority v. Mansky, 708 F.3d 1051, 1057 (8th Cir. 2013) — is entitled to less protection from governmental restriction than a public forum. A regulation of speech in a nonpublic forum will be upheld if it "'is reasonable and not an effort to suppress expression merely because public officials oppose the speaker's view.'" Multimedia Publ'g Co. of S.C. v. Greenville-Spartanburg Airport Dist., 991 F.2d 154, 159 (4th Cir. 1993) (quoting Perry Educ. Ass'n, 460 U.S. at 46).

In resolving this appeal, we agree with the district court that, viewing the Complaint in the light most favorable to the SCV, the City's flag standards fall under a third category denominated as "designated public forums." Such a forum is a nonpublic government site that has been made public and "generally accessible to all speakers." Child Evangelism Fellowship of Md., Inc. v. Montgomery Cnty. Pub. Sch., 457 F.3d 376, 382 (4th Cir. 2006). A designated public forum may be made available "for use by the public at large for assembly and

12

speech, for use by certain speakers, or for the discussion of certain subjects." Id.

The SCV alleges that the City allowed private speakers access to its flag standards between 1994 and 2011. For instance, in September 1994, the City Council granted requests from both Washington and Lee and VMI to fly flags representing those institutions from the flag standards "on three occasions per year." Complaint ¶ 21. In 2005, a social fraternity was granted permission to fly its flag from the standards, and, in 2009, other social organizations were granted permission to fly flags from the standards. Id. ¶¶ 22-23. Viewing those allegations in the light most favorable to the SCV, we are satisfied that the City designated its flag standards as a public forum because it has "purposefully opened [them] to the public, or some segment of the public, for expressive activity." ACLU v. Mote, 423 F.3d 438, 443 (4th Cir. 2005) (emphasizing that "'[t]he government does not create a public forum by inaction or by permitting limited discourse, but only by intentionally opening a nontraditional forum for public discourse'" (quoting Cornelius, 473 U.S. at 802)).

2.

Because the City's flag standards constitute a designated public forum, we turn to an assessment of whether the City properly closed that forum when it enacted the Ordinance in

13

2011.  This dispute is distinguishable from our prior decisions on designated public forums, in which the applicable level of scrutiny has depended on the type of speech or speakers that the government sought to exclude.  See, e.g., Mote, 423 F.3d at 444 (explaining that "internal" or "external" standards of review apply depending on type of speaker excluded in designated public forum); Goulart v. Meadows, 345 F.3d 239, 250 (4th Cir. 2003) (same); Warren v. Fairfax Cnty., 196 F.3d 186, 193-95 (4th Cir. 1999) (same).  Here, the City did not exclude either a specific speaker or a specific class of speech, but closed a designated public forum by disallowing all private expression from its flag standards.

It is important to our resolution of this case that the Supreme Court has recognized that "a state is not required to indefinitely retain the open character of [a designated public forum]."  Perry Educ. Ass'n, 460 U.S. at 46; see also Cornelius, 473 U.S. at 802 (recognizing that government is not required to retain open nature of designated public forum); Currier v. Potter, 379 F.3d 716, 728 (9th Cir. 2004) (observing that government may close designated public forum "whenever it wants"); Make the Road by Walking, Inc. v. Turner, 378 F.3d 133, 143 (2d Cir. 2004) (advising that a "government may decide to close a designated public forum"); United States v. Bjerke, 796 F.2d 643, 687 (3d Cir. 1986) (observing that "officials may

14

choose to close . . . a designated public forum at any time"). Although the First Amendment guarantees free speech in a public forum, it does not guarantee "access to property simply because it is owned or controlled by the government." U.S. Postal Serv. v. Council of Greenburgh Civic Ass'ns, 453 U.S. 114, 129 (1981). As long as a designated public forum remains open, "it is bound by the same standards as apply in a traditional public forum." Perry Educ. Ass'n, 460 U.S. at 46. Here, the designated forum was closed in 2011, and thus, it is no longer protected as a public forum.

The SCV's primary contention on appeal — that the motive behind the Ordinance dictates its constitutionality — lacks controlling precedent. The Supreme Court's decision in Hill v. Colorado illustrates the point, explaining that "the contention that a statute is 'viewpoint based' simply because its enactment was motivated by the conduct of the partisans on one side of a debate is without support." 530 U.S. 703, 724 (2000). Relying on Frisby v. Schultz, 487 U.S. 474 (1988), the Court explained that it had, in the past, recognized a picketing ordinance as constitutional that "was obviously enacted in response to the activities of antiabortion protesters who wanted to protest at the home of a particular doctor." Hill, 530 U.S. at 725. The Free Speech Clause only "forbids Congress and . . . the States from making laws abridging the freedom of speech — a far

15

different proposition than prohibiting the intent to abridge such freedom." Grossbaum v. Indianapolis-Marion Cnty. Bldg. Auth., 100 F.3d 1287, 1293 (7th Cir. 1996) (internal quotation marks omitted). Furthermore, "'[w]e are governed by laws, not by the intentions of legislators.'" Id. (quoting Conroy v. Aniskoff, 507 U.S. 511, 519 (1993) (Scalia, J., concurring in judgment)).

The Ordinance has the effect of closing a designated public forum — the perpetual availability of which was never guaranteed — to all private speakers. The City was entitled to listen to the public and to enact ordinances that are constitutional in text and in operation, and that are supported by the electorate. Notably, the Ordinance specifies that it does not "prohibit or curtail individuals from carrying flags in public and/or displaying them on private property." Lexington City Code § 420-205(C) (2011). As a result, all private groups and individuals remain free to express their flag-bound messages in other ways.

The SCV nevertheless maintains that the motive of the City in enacting the Ordinance is "highly relevant" to our analysis, and that the discriminatory motive is sufficient for the Complaint to survive a Rule 12(b)(6) challenge. See Br. of Appellant 21. The authorities relied upon by the SCV, however, fail to convince us that the City's alleged desire to remove the

16

Confederate flag from its standards renders the Ordinance unconstitutional. The SCV relies on certain decisions that, it says, link the constitutionality of a challenged statute to a discriminatory legislative motive in its enactment. Those cases, however, do not involve a government property forum analysis, else they implicate the Free Exercise Clause or the Equal Protection Clause, as opposed to the Free Speech Clause. See Student Gov't Ass'n v. Bd. of Trs. of Univ. of Mass., 868 F.2d 473, 480 (1st Cir. 1989) (upholding university's decision to abolish student legal services office, but relating in dicta that "[o]nce the state has created a forum, it may not . . . close the forum solely because it disagrees with the messages being communicated in it"); Joyner v. Whiting, 477 F.2d 456 (4th Cir. 1973) (prohibiting university from shutting down student newspaper because administration disagreed with segregationist viewpoints being espoused therein); see also Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah, 508 U.S. 520, 533 (1993) (explaining that "if the object of a law is to infringe upon or restrict practices because of their religious motivation, the law is not neutral"); Crawford v. Bd. of Educ. of City of L.A., 458 U.S. 527, 544 (1982) (recognizing that facially neutral statute may contravene the Fourteenth Amendment if enacted with discriminatory purpose).

17

The argument that a legislative motive matters — in the nature of a "clean hands" equity contention — does not assist our inquiry here. A government is entitled to close a designated public forum to all speech. Reading a clean-hands requirement into the closure of such a forum is not supported by precedent and could produce an absurd result. For example, the City could be beholden to the SCV and other private groups or individuals (e.g., pro-choice activists, the Ku Klux Klan, the Libertarian Party, etc.) that insisted on hoisting their flags on City-owned standards, notwithstanding that the City would prefer to reserve its equipment purely for government speech. In other words, it appears that the City experimented with private speakers displaying flags on the City's standards, and that effort turned out to be troublesome. It was entitled, under the controlling principles, to alter that policy.

Because the City's flag standards are not a traditional public forum, there is no legal support for requiring the City to relinquish its control over them. Inasmuch as the Ordinance was lawfully enacted to close a designated public forum, we affirm the dismissal of the SCV's free speech claim.

B.

Turning to the civil contempt claim relating to the Consent Decree, we agree with the district court that, because there is no constitutional violation posed by the Ordinance, there could

18

be no violation of the Decree.  The Decree bars the City from denying the SCV the right to display the Confederate flag at any "government-controlled place or event which is to any extent given over to private expressive activity."  Consent Decree 2. Had the City not enacted the Ordinance, its rejection of the SCV's request to displays flags on the flag standards may have violated the Decree.  The City, however, has now constitutionally abolished "private expressive activity" from its flag standards.

The SCV also argues that, because the City's flag standards were at one point given over to private expressive activity, they are controlled by the Consent Decree regardless of the constitutionality of the Ordinance.  But because the flag standards are no longer given over to private expression, their use is not governed by the Consent Decree.  The district court thus properly rejected the SCV's claim.

IV.

Pursuant to the foregoing, we affirm the judgment of the district court.

AFFIRMED

19